## KENNETH MANTEUFFEL v. THEO. HAMM BREWING COMPANY.[1]

December 12, 1952.

No. 35,780.

[1]Reported in 56 N. W. (2d) 310.

*Merlyn C. Green* and *Bundlie, Kelley, Finley & Maun,* for appellant.

*Harold Shear,* for respondent.

KNUTSON, JUSTICE.

Appeal from a judgment entered pursuant to a jury verdict in favor of plaintiff.

Plaintiff, who was employed by William Baumeister Construction Company as a painter, was assigned to work at defendant's plant about October 15, 1949, and continued to work there until the date of the injury giving rise to this cause of action, which was January 5, 1950. While working in defendant's plant, he, as well as other painters, was under the direct supervision of Charles A. Philbrook, an employe of defendant. In the absence of Philbrook, Ed Salenski

took over the job of supervising. Salenski, an employe of William Baumeister Construction Company, was considered by the others to be a "straw boss." During the time he worked in defendant's plant, plaintiff worked at different places on both the first and second floors and in the basement of the "bottle house."

On the day of the accident hereinafter described, plaintiff and Frederick Koenig, Jr., another employe of Baumeister, were assigned to paint in the elevator shaft of the bottle house. They worked there until about eleven o'clock when Salenski directed them to leave that job and to start painting a wall on the first floor of the bottle house. Thereupon, they proceeded to the place where they were to work. The wall which they were to paint was an interior wall extending from the east wall of the building some 60 or 70 feet to the west, terminating at that point without joining any other wall at the west end. The wall ran parallel with the north wall of the building, forming a division between the north and south walls of the building or a sort of corridor with the north wall some 36 feet in width. Three conveyors, designed to carry empty beer cases from the second floor to casing machines on the first floor, slanted down from a hole in the ceiling of the first floor about 26 feet south of the wall described above. These conveyors consisted of a series of rollers on a metal frame on which the empty beer cases rolled. The conveyors ran at right angles to the wall to be painted and went through a hole therein 5 feet 6 inches from the floor into the other part of the building. The wall itself was 14 feet high. The first conveyor was 10 feet west of the east wall of the building; the second was 15 feet west of the first; and the third was 15 feet west of the second. The empty beer cases were made of cardboard and fiber and, while quite light in weight, could withstand considerable crushing pressure. The tops of the cases opened in the middle, and as the cases moved down the conveyors the tops were usually open. Before the cases reached the slanting conveyors on which they moved down by gravity, they traveled on an endless belt conveyor located on the second floor.

When plaintiff and Koenig reached the place where they were to paint on the north side of the interior wall, they proceeded to erect a scaffold on which to work. They found there three pieces of equipment, a steel tripod or "tilly jack," adjustable in height and weighing about 55 pounds; a heavy stepladder about 10 feet high and weighing about 60 pounds; and a 2 x 12 plank 16 feet long. They placed the tilly jack at the west end of the wall. The stepladder was placed near the east side of conveyor No. 3. The two were about 13 feet apart. They then placed one end of the plank on the second step from the top of the stepladder and the other on a crossbar provided for that purpose on the tilly jack. As so placed, the plank was about seven or eight feet from the floor. It was about two feet from the wall. The conveyor at that time was loaded with empty cases. The men tested the clearance between the plank and the top of the cases and found it to be about four or five inches. To obtain a little more clearance, they placed a 2 x 4 under the end of the plank on the stepladder. This resulted in a clearance of about six inches over the cases then on the conveyor.

After completing the erection of the scaffold, the men went to lunch. During this time the conveyor was not running although it was loaded with cases. They returned about 12:30, and the conveyor still was not running. Salenski provided them with the necessary paint and plaintiff began painting on the tilly jack end of the plank and Koenig on the other end. They were facing the wall as they painted. After so painting about 15 minutes, something jarred the stepladder, and the scaffold leaned over toward the wall and rocked back and forth. Koenig yelled at plaintiff. Plaintiff either fell off the scaffold or jumped, and the plank also fell down, as the result of which plaintiff sustained the injuries for which he now seeks to recover damages.

It is conceded that both William Baumeister Construction Company and defendant are covered by the workmen's compensation act and that plaintiff has applied for and has received the compensation to which he is entitled from his employer pursuant to that act.

The questions presented by this appeal are:

(1) Did plaintiff's receipt of benefits from his employer under the workmen's compensation act bar his right to bring this action under the provisions of M. S. A. 176.06, subd. 1?

(2) Does the evidence sustain a finding of defendant's negligence and that such negligence, if proved, constitutes the proximate cause of plaintiff's injury?

(3) Did the court err in admitting testimony tending to establish that beer cases had fallen off the conveyors or piled up on previous occasions?

(4) Did the court err in submitting to the jury the issue of whether defendant had furnished plaintiff with safe equipment?

(5) Did the court err in refusing defendant's requested instructions hereinafter mentioned?

(6) Did the court err in refusing to give the jury corrective instructions regarding remarks of counsel in his closing argument, which remarks are now claimed to be prejudicial?

■ Minnesota, standing alone, has adopted by statute, as a part of its workmen's compensation act, a provision (§ 176.06, subd. 1) which has been the source of much troublesome litigation. Our cases construing this statutory provision are adequately reviewed in Gleason v. Geary, 214 Minn. 499, 8 N. W. (2d) 808; Swanson v. J. L. Shiely Co. 234 Minn. 548, 48 N. W. (2d) 848; and Volding v. Harnish, 236 Minn. 71, 51 N. W. (2d) 658. It would serve no useful purpose to repeat what we said there, and little more can be said which would aid the bench or bar in the application of this troublesome statute.

It is clear under the decisions of this court that this action is not barred by § 176.06, subd. 1. Defendant had no employes engaged in painting. It is true that it furnished the supervision in the person of Charles A. Philbrook, but otherwise the work of painting was entirely disconnected from the work of defendant's employes. Defendant contends that both defendant's employes and those of the Baumeister company were exposed to the same hazards

as far as the conveyors were concerned, but that contention is not tenable because only the painters were exposed to the hazard created by the conveyors running under the scaffolding on which they worked. The only distinction between the facts in this case and those in Gleason v. Geary, *supra,* is that here the supervision was furnished by defendant and the scaffolding used was likewise furnished by defendant. As far as the work done by plaintiff was concerned, it was as completely separated from that done by defendant's employes in the operation of its business as in the Gleason case.

■ Does the evidence sustain a finding of defendant's negligence and its causal connection with plaintiff's injury? Plaintiff, having recovered a verdict, is entitled to have the evidence and the permissible inferences to be drawn therefrom viewed in the light most favorable to him. Much of plaintiff's proof is circumstantial. In considering the circumstantial evidence, we are guided by the rule that—

"* .* * It was not necessary for the plaintiff to exclude every other reasonable hypothesis by the circumstantial evidence which she introduced, but a jury may not be permitted to guess as between two equally persuasive theories consistent with the circumstantial evidence. The evidence must be something more than consistent with the plaintiff's theory of how the accident occurred. Reasonable minds functioning judicially must be able to conclude from the circumstances that the theory adopted by the verdict outweighs and preponderates over any other theory." Smock v. Mankato Elks Club, 203 Minn. 265, 266, 280 N. W. 851, 852.

A brief summary of the testimony of the witnesses called by both parties may be helpful. Plaintiff testified that after he had been painting for about 15 minutes the plank began to rock and he heard Koenig shout a warning. He felt the plank on which he was standing move toward the wall, and he saw a big pile of boxes on the conveyor and against the wall. The boxes were touching the plank. He jumped before the plank fell. He further said that he

did not know whether the conveyor was running at the time nor did he notice whether the tilly jack, ladder, or plank were on the floor. He did not know what caused the pile up of boxes. He thought that the scaffold had been properly set up and was in perfect condition. He had never had instructions about working over the conveyors, and he had not seen boxes pile up on the conveyors prior to the accident, nor had he been warned that they might do so.

Frederick Koenig, Jr., testified that after they had started painting he felt a jar and felt himself being pushed to the wall. He stated:

"Well, I yelled at Mr. Manteuffel, I says, look out, and I placed myself against the wall, and when this object let go of the step ladder, whatever it was, let go, we fell backwards."

He then testified that after he felt an object strike the scaffold he looked around and saw beer cases piling up on the floor, that the conveyor was then in operation, but that after they fell the operators of the machine shut off the conveyor. He stated also that the scaffolding was in good condition.

William J. Dericks, an employe of defendant, stated that he had occasionally seen boxes fall off the conveyor but had not seen them pile up. He stated that the beer cases are strong enough to support the weight of a man. Other witnesses called by plaintiff and defendant testified as to the construction of the conveyors, their operation, and that cases had been seen to fall off the conveyors.

The conveyor on the second floor consisted of an endless belt on which the cases were placed. The testimony of defendant's witnesses was that when the conveyor became full the belt slid underneath the cases.

There is no direct evidence from eyewitnesses as to what struck the scaffold, but there is ample evidence to sustain a finding that something struck the scaffold and pushed it sufficiently hard to tip it toward the wall. Since there was nothing else near the scaffold and so far as appears from the record nothing else could have

caused the scaffold to fall, the jury would be warranted in inferring that it was a pile up of cases that struck the scaffold. We have examined photographs of a similar conveyor in operation, and it is apparent therefrom that if cases from the conveyor piled up against the scaffold they would be pushed by the combined pressure of a large number of cases pulled by the force of gravity and the pressure of cases above being moved on an endless belt. This pressure would be applied to the scaffold here some five or six feet from the floor. While it might not have been sufficient to push the scaffold over if applied near the bottom, it is common knowledge that it takes less pressure to upset a scaffold, constructed as was this one, when the pressure is applied near the top. We believe that the jury was justified in finding that the pile up of cases caused the scaffold to fall.

Defendant contends that even if this were so there is no showing that the possibility of this pile up occurring was either known to defendant or was in the range of defendant's anticipation.

The court permitted Nathaniel C. Thurber, who was called as a witness by plaintiff and who had worked as an employe of the Baumeister company in defendant's plant, to testify that he had seen cases pile up on the conveyors before this accident. He could not recall if it was on the conveyor here involved or not. In any event, an examination of the photographs in evidence shows that the cases do not come down the conveyor in an even line. Some are more open than others. Keeping in mind that defendant must be held chargeable with knowledge that the scaffold was erected a few inches above the conveyor when it was not in operation, we believe that the evidence is sufficient to warrant the jury in finding that defendant also knew that if the conveyor was started up there would be danger of some of the cases coming in contact with the scaffold and causing a pile up of other cases on the conveyor. While the evidence is not strong, it cannot be said that reasonable minds functioning judicially could not conclude both that defendant had knowledge of the possibility of such pile up and that it should

have anticipated it. We believe that the evidence sufficiently sustains the finding of negligence and its causal relationship to the accident.

Defendant relies principally upon Orth v. St. P. M. & M. Ry. Co. 47 Minn. 384, 50 N. W. 363, and Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243. In determining whether evidence is sufficient to sustain a finding of negligence, cases cited are not often helpful. The facts are seldom the same or even similar. In the Hanrahan case, we affirmed the trial court's action in directing a verdict, holding that there was no evidence to show that the scaffold in use was defective or unusable or that there was anything which caused it to collapse. The same is true of Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611, cited by defendant, where all that appeared from the evidence was the occurrence of the accident, with nothing to show how it happened. There was no circumstantial evidence from which an inference could reasonably be drawn that it resulted from the negligence of defendant. In the Orth case also, we held that the evidence left the cause of the accident wholly in the realm of conjecture. In the case before us, we do not believe that is true. Here, it appears that only one thing could have caused the jar testified to by Koenig. It was reasonable to infer that whatever caused the jar in the first place caused the scaffold to fall. We do not believe that the authorities cited by defendant sustain its contentions.

■ Defendant next contends that it was error to permit Nathaniel C. Thurber, who had been employed by defendant from 1941 or 1942 to 1946 and by the Baumeister company for a few months in 1949 and 1950, to testify that he had seen boxes pile up on other conveyors while working as defendant's employe. He did not recall on what conveyors he had seen such pile ups. While the evidence was quite remote, most of his testimony went in without objection. No attempt was made to show that the conveyors were of a different type. The objection made related largely to the sufficiency of the foundation. While the evidence might well have been excluded, we do not believe that admitting it was reversible error.

■ The court submitted to the jury as one possible element of negligence the question whether defendant had furnished plaintiff with equipment safe for the use to which it was put. Plaintiff and his co-worker, Koenig, both testified that the equipment was in good condition. However, in considering whether equipment is safe in a particular situation, the circumstances under which it is to be used is always one of the factors which determine whether or not it is safe. Here, the scaffold furnished might well have been in perfect shape and entirely safe for use in another location. The question to be determined, however, is whether it was safe for use in painting over or in close proximity to the conveyors while they were in operation. Viewed in that light, it was not error to submit this issue to the jury.

■ Defendant next assigns as error the court's refusal to give the jury the following requested instruction:

"Defendant owes no duty to plaintiff to correct or change any hazard existing on the premises until and unless defendant has notice or knowledge of the existence of such hazard for a sufficient length of time to enable defendant to take whatever steps may be reasonable under the circumstances to correct the condition, or unless the condition has been shown to exist for such a length of time that defendant must be presumed to have known of its existence."

In support of this contention, defendant relies upon Rue v. Wendall, 26 Minn. 449, 452, 33 N. W. (2d) 593, 595, where we said:

"An essential element of negligence is the actor's knowledge, actual or imputed, of the facts out of which the alleged duty arises. Negligence involves the idea of fault, and, because that is true, an act or omission is not negligent unless the actor had knowledge or notice that it involves danger to another. * * * Precautionary duty depends on reason to apprehend results. * * * Duty is dictated and measured by the exigencies of the occasion as they are

'or should be known to the actor. An act or omission from which no injury should be anticipated is not negligent."

And Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 137, 21 N. W. (2d) 229, 231, where we said:

"* * * The rule is that a store owner is not an insurer of his customers' safety, that plaintiff must prove negligence, and that negligence depends upon notice, actual or constructive, to defendant of such a hazard as that here involved and its failure to do anything about it."

While it is true that before there can be negligence there must be knowledge, actual or imputed, of the facts out of which the alleged duty arises, imputed knowledge may follow from facts proved without showing actual knowledge. Where, as here, defendant furnishes equipment for a particular use, having knowledge of the conditions under which it is to be used, knowledge of the dangers which are inherent in such use may be imputed. It is not necessary to prove that a similar accident has occurred before the one involved in order that knowledge of the dangers inherent in a particular use may be imputed to defendant. Here, the equipment was furnished to plaintiff for use in a particular way and for a particular purpose. Defendant, through its employes, had full knowledge of the manner in which the equipment was to be erected and used. It is not too much to say that under those circumstances knowledge of the inherent dangers of using the equipment over the conveyors, when the conveyors were in operation, may be imputed to defendant. Under those circumstances, it was correct to refuse the instruction, which does not take into consideration the knowledge which may be imputed to defendant.

■ Defendant also assigns as error the court's refusal to instruct the jury as follows:

"Defendant is not required to call to plaintiff's attention or to warn plaintiff of any condition or hazard which is open and obvious and can be expected to be as apparent to plaintiff himself as to defendant. As to such conditions, defendant is entitled to rely on

the assumption that plaintiff will take reasonable precautions to protect himself."

The court did instruct the jury adequately on the doctrine of assumption of risk by plaintiff. The requested instruction was not necessary in view of the instructions given by the court. Furthermore, the instruction might well have been misleading. There is nothing to show that plaintiff knew anything about the operation of the conveyors or the possibility of a pile up of cases in such a manner as to endanger the scaffolding as erected. Defendant, on the other hand, must be chargeable with knowledge of the operation of its conveyors. It would not be correct to say that under these circumstances both parties had an equal opportunity of apprehending the dangers which would become operative only when the conveyors were placed in operation.

■ Finally, defendant contends that the court erred in refusing defendant's request for corrective instructions regarding improper remarks of plaintiff's counsel in his closing argument.

We have the entire argument of counsel in the record and have carefully examined the remarks complained of. Some of counsel's statements are far from commendable. As an example we find the following:

"Mr. Green's first name is Merlyn. The only other Merlin I ever heard of is a fellow from King Arthur's tales, and he's a magician. And I think Mr. Green is something of a magician too. There has been much talk in this case about confusion, and I would say Mr. Green is to blame for the confusion. Some of his questions would confound a Philadelphia lawyer. Their witnesses couldn't understand them and our witnesses couldn't understand them, and I couldn't understand them, and some of the time the Court couldn't understand them. And that's part of his job, to try and get our witnesses confused and mixed up. That's part of his job as a lawyer, and I don't criticize him for it, but, nevertheless, Mr. Green has come up here, and like his famous predecessor, Merlin the magician, has tried to pull a legal rabbit out of the hat."

Again, in referring to the pressure apt to be caused by a pile up of cases, we find the following:

"* * * as we increase the number of boxes and increase the pressure, soon we come to the point where considerable force is exerted, not, as Merlin the magician said, a slight force."

There are other instances which might be mentioned. The record discloses that the case was tried fairly by counsel for defendant. The question of defendant's negligence is extremely close. There should have been no occasion to belittle defendant's counsel by such unseemly characterization. Lawsuits should be tried on facts not on ridicule injected into counsel's argument for the purpose of arousing prejudice, and, while we do not think the argument is so prejudicial as to warrant a new trial, we cannot overlook the impropriety of such unnecessary and undesirable tactics.

Affirmed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

It seems to me that defendant's position on this appeal that there is no showing that the possibility of the pile up of the cases was either known to defendant or within the range of its anticipation is well taken. It is true that plaintiff's witness, Thurber, testified that on some occasions—he did not know when or on what conveyor—he had seen cases pile up on a conveyor. That was the only testimony to that effect. The witness did not know whether any such conveyors were in any way similar to the one involved in this action, and his recollection of a similar incident was in no way related in point of time, place, or cause to the accident upon which this action is based. It does not seem to me that the testimony of this witness is competent, as I cannot see where it established any negligent habit on the part of defendant, related in any way to the accident in question. Neither does it appear to me that the testimony was competent to establish that the pile up of cases which he claimed to have seen at various times was in fact the cause of the accident. It is well settled that the occurrence of prior incidents at various other unidentified times and locations is not evidence

that the same thing occurred on the occasion in question. Morse v. M. & St. L. Ry. Co. 30 Minn. 465, 16 N. W. 358; Davidson v. St. P. M. & M. Ry. Co. 34 Minn. 51, 24 N. W. 324; Henderson v. Bjork Monument Co. Inc. 222 Minn. 241, 24 N. W. (2d) 42; Orth v. St. P. M. & M. Ry. Co. 47 Minn. 384, 50 N. W. 363. Rather, it appears to me that this more or less remote testimony could have been quite prejudicial as far as the jury was concerned and that in the interest of justice a new trial should be granted excluding this testimony.

The rule is well settled in this state that in order to recover for a defective condition the defendant must have notice of the defect or in the exercise of reasonable care should have known of it or should have apprehended that such defect might occur and would be dangerous. Doyle v. St. P. M. & M. Ry. Co. 42 Minn. 79, 43 N. W. 787. I cannot conclude that the kind of testimony furnished by the witness Thurber was sufficient to place defendant on such notice that it should apprehend that a pile up of the cases would bring about the accident in question. As stated in Rue v. Wendland, 226 Minn. 449, 452, 33 N. W. (2d) 593, 595:

"An essential element of negligence is the actor's knowledge, actual or imputed, of the facts out of which the alleged duty arises. Negligence involves the idea of fault, and, because that is true, an act or omission is not negligent unless the actor had knowledge or notice that it involves danger to another."

Without Thurber's testimony with reference to the pile up of cases on other occasions, we can find nothing in the record from which we could say that defendant was put on guard in such a manner as to be held negligent in the situation here where it is more or less speculative as to just what caused the scaffold to fall.