# BRUCE STENZEL, BY HIS FATHER AND NATURAL GUARDIAN, HENRY L. STENZEL, AND ANOTHER v. FRANCIS J. BACH, JR., AND ANOTHER.

203 N. W. 2d 819.

January 26, 1973—No. 43186.

*Erickson, Zierke, Kuderer & Utermarck, Charles R. Zierke,* and *Lance B. Nyberg,* for appellants.

*Blethen, Ogle, Gage & Krause, Bailey W. Blethen,* and *Raymond C. Krause,* for respondents.

Heard before Knutson, C. J., and Peterson, Murphy, and Schultz, JJ.

HAROLD W. SCHULTZ, JUSTICE.*

This action arises as the result of personal injuries sustained by plaintiff Bruce Stenzel (hereafter plaintiff) while riding as a passenger in an automobile owned by Francis J. Bach and driven by his 18-year-old son, Francis J. Bach, Jr., both named as defendants herein. The trial court found, as a matter of law, that plaintiff was not negligent. Defendants appeal from the denial of their alternative motion for judgment notwithstanding the verdict or a new trial.

At the time of the accident, the 17-year-old plaintiff was seated in the right rear seat of the car next to 17-year-old Daniel Schnider. Another passenger, Larry Stenzel, 18 years old and a cousin of Bruce Stenzel, rode in the right front seat of the car. The four boys had met earlier in town and had played cards before deciding to go for a ride in Bach's car. Plaintiff had no driver's license and had never before ridden with Bach. The four boys drove west out of town on a road which followed the contours of a nearby lake. Bach proceeded through two curves within a mile or two of town. He then turned around and came back toward town. He estimated his speed on the first curve returning to town as about 85 miles per hour but accelerated his speed until he reached between 105 and 110 miles per hour going into the last curve. He lost control of the car which left the road and crashed, causing injuries to the occupants.

Plaintiff testified that as they left town he and Schnider talked about school affairs and he paid no attention to the road, curves, or speedometer and thought they went around the curves at an average speed. Defendant driver testified Schnider asked, "Are you going to see how fast you can take the curves," and that Schnider said, "Well, we made it through about 80 that time" after the first curve on the return to town. Schnider testified that he had not said anything about speed, and plaintiff also asserted that he heard no remarks about speed. No one protested

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

defendant's driving or asked to get out of the car. Plaintiff testified that on the ride back into town he did not realize they were traveling at an excessive speed until he was thrown back against the seat. Defendant admits he accelerated partly because of what Schnider allegedly said and in part because he was motivated by a "crazy impulse."

The cases of Daniel Schnider and plaintiff were tried together. Only the Stenzel case, however, is before us on appeal.

At the conclusion of the trial, the court directed a verdict in plaintiff's favor on the issue of his own comparative negligence. It left the question of Schnider's comparative negligence to the jury. The court submitted the issue of assumption of risk as a phase of negligence, giving an instruction regarding both reasonable care and known hazards. The jury, upon special verdict, found that, as to the negligence which caused Schnider's injuries, Schnider was 15 percent negligent and defendant was 85 percent negligent. Plaintiff was awarded $45,000 in damages and his father was awarded $3,400 for his special damages. The court granted amendment of the complaint which had alleged only $25,000 in damages to conform to the proof of damages and ordered judgment accordingly.

The issues raised by defendants on this appeal are: (1) Whether the court improperly directed a verdict for plaintiff on the question of negligence; (2) whether a new trial should have been granted on the grounds of newly discovered evidence; and (3) whether the jury's verdict was excessive thereby warranting a new trial.

Where the facts are disputed, the question of negligence is for the jury. Even where the facts are undisputed, negligence remains a jury question if different minds, in applying the legal criteria of due care, might reasonably arrive at different conclusions or might reasonably disagree as to the inferences to be drawn from the facts. A trial court is justified in directing a verdict on the issue of negligence only where different minds can reasonably arrive at but one result. Nees v. Minneapolis St. Ry.

Co. 218 Minn. 532, 535, 16 N. W. 2d 758, 761 (1944). A directed verdict accepts the view of the entire evidence most favorable to the adverse party. It should be granted only in those unequivocal cases where in the light of the evidence as a whole it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence or where it would be contrary to the law applicable to the case. Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 325, 79 N. W. 2d 688, 693 (1956).

Defendant contends that the questions of both contributory negligence and assumption of risk should have been submitted to the jury and cites Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), for the proposition that assumption of risk is still an affirmative defense barring any recovery by plaintiff in causes of action such as this one which arose before the decision in Springrose. Whether these two questions should have been submitted to the jury remains one issue, however. The question in both instances is whether plaintiff put himself in a position to encounter known hazards.

It is the duty of a passenger to exercise ordinary care for his own safety, doing things to assure his own safety that an ordinarily prudent person would do under the same or like circumstances. It is usually for the jury to say whether the circumstances command action on the passenger's part and, if so, how much action. Tatro v. Carlson, 271 Minn. 536, 137 N. W. 2d 187 (1965); Hubenette v. Ostby, 213 Minn. 349, 6 N. W. 2d 637 (1942).

However, the court did not submit this issue to the jury and made this explanation for its action:

"There was absolutely no evidence as to any negligence of Bruce Stenzel. He had never been in this car before or ridden with the defendant Bach or 'raced' around 'the curves' at any time previously. There was no evidence from which any inference could be made that he did or could have anticipated that Mr. Bach would 'race around the curves'. There was evidence, which was

contradicted, that did show a conversation between the plaintiff Schnider and defendant Bach from which an inference could be made that Mr. Bach was going to 'race around the curves', but there was no evidence that Bruce Stenzel heard such conversation or that he was in any position to have heard such conversation. Under such circumstances there was nothing to submit to the jury on this issue."

The record substantiates the action of the court on this issue. It does not appear that plaintiff had placed himself in a position to encounter known hazards. An ordinarily prudent person would not admonish or protest where he is unaware of the danger.

The question of whether a motion for new trial on the grounds of excessiveness of damages should be granted is within the discretion of the trial court. Upon review, this court will not reverse unless the trial court has clearly abused its discretion. DeWitt v. Schuhbauer, 287 Minn. 279, 177 N. W. 2d 790 (1970) ; Fisher v. Edberg, 287 Minn. 105, 176 N. W. 2d 897 (1970). In considering whether a verdict is excessive, a comparison with previous verdicts is not justified because of the variations in facts and fluctations in the economy. Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. 2d 873 (1955). Considerations may include past and future pain, permanent partial disability, life expectancy, inability to follow one's usual occupation coupled with a loss of earning power, and the inflationary trend of the economy. DeWitt v. Schuhbauer, *supra*.

When this case came to trial, plaintiff Bruce Stenzel had a life expectancy of 47 years. He has substantial pain when he works and must rest periodically. Often he feels pain similar to that of a knife in his back. He must be constantly aware of his leg when he walks or he falls. He has been unable to play school basketball as he formerly did. His hunting activities have been curtailed. His hands shake and he has had blackouts. Both plaintiff's and defendants' doctors testified that he has a permanent disability of both his leg and back. These disabilities severely

limit his future job opportunities and affect his earning potential.

The verdict may be liberal, but it is not so excessive as to conclusively demonstrate bias, passion, or prejudice.

Defendants' contention that a new trial should have been granted on the grounds of newly discovered evidence is without merit. The rulings of the trial court on this issue are substantiated by the evidence.

Affirmed.