## HAROLD CLARK v. RENTAL EQUIPMENT COMPANY, INC.

220 N. W. 2d 507.

July 19, 1974—No. 44119.

*Scholle, Schweiger & Scholle* and *Mark Scholle,* for appellant.
*Abrams & Spector* and *Mitchell R. Spector,* for respondent.

Heard before Knutson, C. J., and Otis, Todd, and Scott, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

Action for personal injuries sustained in a fall from a scaffold. The jury found that defendant only was causally negligent and assessed damages in the amount of $132,885.40. Defendant appeals from the judgment and from the denial of its alternative motions for a new trial or a judgment notwithstanding the verdict. Affirmed.

Plaintiff, Harold Clark, had volunteered to repair ceiling tiles at Christ the King Lutheran Church. Defendant conducts a rent-all type of business, renting, among other things, scaffolding equipment, mainly to individuals and homeowners. The scaffold in question stood approximately 5 feet, 5 or 6 inches high, with base dimensions of 7 to 12 feet by 4 feet. The accident occurred on August 9, 1969, when plaintiff fell off one end of the scaffold.

The church had had prior business contacts with defendant and had, in particular, rented scaffolding units on three occasions preceding this rental on August 6, 1969. Testimony of various witnesses indicated that the procedure followed in these

rentals was for an employee of the church to select the various pieces of equipment required from the available stock of defendant. Guardrails were never rented, but other accessory items were selected. Thomas McKasy, from whom the equipment was rented, was told by Milford Baggenstoss, a caretaker for the church, that the church needed scaffolding for some "light work," but never was informed as to the particular nature of the use. McKasy testified that, inasmuch as the employee of the church was a regular customer who had utilized the particular equipment before, he (McKasy) assumed that the employee had knowledge of what equipment was necessary and how to use it. Both defendant and the church employee indicated that neither contemplated the rental of a complete scaffolding unit.

The scaffold is constructed with parallel end frames containing bars at 18-inch intervals, permitting planks to be suspended across the unit to form the standing platform. The height of the platform can be varied by placing the planks over different bars. Planks were not rented from defendant, as the church was equipped with its own set.

Various witnesses testified that the scaffold itself was solidly constructed; that there was nothing abrasive about the planks; that they fit snugly, did not twist; and that there were neither holes nor were there projections extending from them. Wheels were ordered as an accessory item to facilitate moving the unit as the repair work progressed. Guardrails were not selected by the employee and had they been ordered, defendant would have charged an additional amount. The Deal Manufacturing Company, manufacturer of this particular scaffolding unit, published and sent to defendant a brochure prior to the August 6, 1969, rental date. The brochure displayed a fully erected scaffold unit with neither guardrails nor wheels attached. Further, the company recommended that a separate rate be charged for each particular piece of equipment, including each post and rail in the guardrail assembly. McKasy testified that a copy of "Suggested Scaffold Safety Rules" published by Deal had not been received

by him prior to the rental date. One of these rules recommends the use of guardrails to promote the safety of those using the equipment.

It is clear from the record that the men who worked on the scaffold, with the exception of plaintiff who was unable to recall the events of the day of the accident, had realized during the course of that day that there was no protection above the planks. Two men working on the project with plaintiff stated that they realized extreme care was necessary after mounting the unit. One worker observed plaintiff and Theodore Skare, another co-worker, taking precautions not to slip, stumble, or misstep. No effort was made to contact defendant to procure guardrails.

Mr. Skare, a witness to the accident, testified that he had placed a tile and was picking up another when he observed plaintiff walking at the other end of the platform. Clark was standing erect with his left foot approximately 4 to 5 inches from the south end of the scaffold. As he placed his right foot down in a walking position, he stepped off the platform. There were no diversions or distractions, and Skare stated that plaintiff neither slipped nor tripped.

As a result of this fall, Clark underwent major brain surgery and suffered losses in vision, speech, reading retention, hearing, and mental processes. He was unable to continue his occupation as a bus driver as a result, and later found employment as a janitor with a substantially reduced income. Expert testimony established that his employability had been substantially reduced in consequence of his injuries and resulting disabilities.

An expert witness who had practical and commercial experience with the mechanics of scaffolds testified over defendant's objection that scaffolding equipment is not safe without a guardrail and that the rail will prevent one from falling from the unit. The opinion was objected to upon the ground that it exceeded the scope of expert testimony and was within the common knowledge and experience of the jury.

The jury concluded that plaintiff was not negligent; that the

defendant was negligent in renting the scaffolding without furnishing guardrails and without warning as to the dangers; that this negligence directly caused the plaintiff's injuries; and that damages should be assessed in the amount of $132,885.40.

The defendant initially contends that inasmuch as the lack of a guardrail was an open and obvious defect as a matter of law, the court should, at the least, have instructed the jury with regard to the definition and application of the doctrine of open and obvious defects. In citing Sarnoff v. Charles Schad, Inc. 49 Misc. 2d 1059, 269 N. Y. S. 2d 22 (1966); 50 Misc. 2d 418, 270 N. Y. S. 2d 763 (1966), affirmed, 22 N. Y. 2d 180, 292 N. Y. S. 2d 93, 239 N. E. 2d 194 (1968), defendant's conclusion is that the lack of guardrails above the standing platform was open and obvious, and that therefore the commercial supplier was not liable.[1] This case is, however, distinguishable upon the facts. In Sarnoff, a general contractor subcontracted the erection of scaffolding for church repairs. The scaffolding rose to more than 20 feet above ground and did not have the safety rail required by statute. The lack of a safety rail was found to be the proximate cause of the fall of the painting subcontractor's employee but the court held the supplier not liable because the unguarded scaffolding presented a patent danger to the employee.

The facts before us, rather, involve a volunteer inexperienced in the use of scaffolding and, due to his lack of memory, not able to offer testimony either supporting or contradicting conclusions of others that the defect was patent. We are compelled to impose more stringent standards pertaining to the commercial leasing of potentially dangerous equipment to inexperienced users.

In Minn. St. 1971, § 182.12, this state adopted a standard for the protection of employees similar to the statutory standard in

---

[1] The defendant cites two other cases also to support its theory that the defect must be latent in order to impose common-law negligence upon a manufacturer, architect, builder, or property owner: Campo v. Scofield, 301 N. Y. 468, 95 N. E. 2d 802 (1950); Inman v. Binghamton Housing Authority, 3 N. Y. 2d 137, 164 N. Y. S. 2d 699, 143 N. E. 2d 895, 59 A. L. R. 2d 1072(1957).

effect in New York at the time of the Sarnoff decision. Although our statute has recently been repealed,[2] it is relevant to our discussion as exemplary of legislative efforts to eliminate dangers inherent in scaffolding which exceeds a minimal height. The statute provided in pertinent part:

"When practicable, *all scaffolds*, hoists, cranes, stays, supports, or other mechanical contrivances, *erected or constructed by any person, firm, or corporation, in this state,* for the use in erection, repairing, alteration, removal, cleaning, or painting of any house, building, bridge, viaduct, or other structure *shall be erected and constructed in a safe, suitable, and proper manner and so erected and constructed,* placed, and operated as to give proper and adequate protection to the life and limb of any person employed or engaged thereon, and to any person or employee passing under or in proximity to the same. * * * Wherever practicable, scaffolding, staging, runways, oiling platforms, and all other overhead walks or standing places among or suspended from an overhead support, or *rising from the ground floor and more than five feet from the ground or floor, shall have a safety rail properly bolted or otherwise fastened, secured, and braced, rising at least 34 inches above the floor* of the scaffolding, staging, platform, or other overhead walk or standing place, and extending along the entire length of the outside and ends thereof, and properly attached thereto, *unless equal protection is afforded in another manner,* and such scaffolding or staging shall be so fastened as to prevent the same from swaying from the building or structure to which it is attached or toward which an employee must work." (Italics supplied.)

The statutory language is obviously based on the proposition that scaffold units rising to a height of more than 5 feet are considered less safe when not accompanied by a safety rail or other suitable protection. Therefore, the mandatory language above was employed by the legislature to promote employee safety.

___

[2] See, L. 1973, c. 732, § 27, effective January 1, 1974.

Without doubt, the imminence of any recognized danger would be aggrandized when such equipment is used by inexperienced operators. We are therefore compelled to extend the theory behind this statute to that defined class of users.

This court has often been faced with the results of defective equipment offered for sale or lease and has set rather compelling standards for the protection of persons engaged in the use of scaffold equipment. In Miller v. Macalester College, 262 Minn. 418, 115 N. W. 2d 666 (1962), the evidence was held sufficient to support a finding that the scaffold company had failed to exercise reasonable care in furnishing equipment which could be used safely in work for which the company knew or should have known it was intended, and further, in not adequately warning the prospective users as to risks inherent in improper use of the equipment. Failure to give adequate warning was more strongly suggestive of negligence since the company knew or should have known that the users were inexperienced. In Miller, the defendant scaffolding company furnished a scaffold unit for use by college students completing classwork assignments. In affirming the jury's determination that the college was liable to the injured student, this court also found that the jury could believe that the defendant company's representative had seen the site where the equipment was to be used, that he was aware of safety devices recommended by the manufacturer for units more than 15 feet high, and that it was a recognized safety practice that no one remain atop the unit while it was being moved. The plaintiff student was injured when the unit, while being moved, toppled to the ground.

We have often stated that when suppliers of machinery or equipment know or should anticipate that inexperienced operators might use it in a particular manner, the duty rests upon them to warn such operators as to dangers which might arise. See, Johnson v. West Fargo Mfg. Co. 255 Minn. 19, 95 N. W. 2d 497 (1959); Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. 2d 688 (1956) ; Hartmon v. National Heater

Co. 240 Minn. 264, 60 N. W. 2d 804 (1953). This court has further held that one who supplies a chattel to another is liable to third persons for injuries caused by its use in a manner for which it is supplied, if the supplier knows, or should realize, that it is likely to be dangerous for such use, and further, has no reason to believe that the person to whom it is supplied will realize the danger and the supplier fails to exercise reasonable care to inform him of this danger. Mikel v. Aaker, 256 Minn. 500, 99 N. W. 2d 76 (1959); see, also, Haskin v. Northeast Airways, Inc. 266 Minn. 210, 123 N. W. 2d 81 (1963); Noel, *Recent Trends in Manufacturers' Negligence as to Design, Instructions or Warnings*, 19 Sw. L. J. 43.

The condition of a scaffold unit was considered by the court in Manteuffel v. Theo. Hamm Brewing Co. 238 Minn. 140, 149, 56 N. W. 2d 310, 316 (1952), where we stated:

"* * * [I]n considering whether equipment is safe in a particular situation, the circumstances under which it is to be used is always one of the factors which determine whether or not it is safe. * * *

\* \* \* \* \*

"While it is true that before there can be negligence there must be knowledge, actual or imputed, of the facts out of which the alleged duty arises, imputed knowledge may follow from facts proved without showing actual knowledge. Where, as here, defendant furnishes equipment for a particular use, having knowledge of the conditions under which it is to be used, knowledge of the dangers which are inherent in such use may be imputed."

With these standards in mind, it is our opinion that there is more than adequate evidence to support the jury verdict. The jury was justified in finding that a church volunteer, otherwise employed as a bus operator, was unfamiliar with the equipment available to promote safe working conditions for persons using a scaffold. Further, the jury might well have imputed to the commercial lessor of the scaffolding knowledge that in all likelihood

anyone working for the church would not be experienced with either the particular work or the utilized equipment and that it would be used in a particular fashion. Such safety standards as were stated in the manufacturer's Suggested Scaffold Safety Rules should have been recognized and promoted by the lessor. Such a holding is buttressed by the testimony of an expert witness that scaffolding equipment without guardrails is dangerous. The witness stated further that guardrails will prevent one from falling from the unit.

It is a well-established principle that expert testimony is admissible whenever the subject of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment without assistance. Moteberg v. Johnson, 297 Minn. 28, 210 N. W. 2d 27 (1973); Dyson v. Schmidt, 260 Minn. 129, 109 N. W. 2d 262 (1961). See, also, Fick v. Wolfinger, 293 Minn. 483, 198 N. W. 2d 146 (1972). A reasonable test to be applied is whether the members of the jury, having the knowledge and general experience common to every member of the community, would be aided in the consideration of the issues by the offered testimony. Kreyer v. Farmers' Co-op Lbr. Co. 18 Wis. 2d 67, 75, 117 N. W. 2d 646, 651 (1962).

An application of this test demonstrates the admissibility of the expert's testimony for the jury would doubtless be aided by such an expert opinion. We are therefore of the opinion that the lower court did not abuse its discretion in allowing the admission of this expert opinion for the jury's aid. Rather, the opinion of the expert was necessitated to completely apprise a jury of inherent dangers.

The judgment of the lower court is therefore affirmed.

Affirmed.

Mr. Chief Justice Sheran, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.