Merlon FREY, et al., Respondents,

v.

MONTGOMERY WARD & COMPANY, INC., defendant and third party plaintiff, Appellant,

v.

McGRAW–EDISON COMPANY, third party defendant and fourth party plaintiff, Respondent,

v.

ROBERTSHAW CONTROLS COMPANY, fourth party defendant, Respondent.

No. 46872.

Supreme Court of Minnesota.

Sept. 28, 1977.

Doherty, Rumble & Butler and Bruce E. Hanson, St. Paul, for appellant.

Schiefelbein & Greenberg and Alan G. Greenberg, Minneapolis, for Frey, et al.

Ochs, Larsen, Klimek & Cesario and Norman W. Larson, Minneapolis, for McGraw-Edison Co.

Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Robertshaw Controls Co.

Heard before PETERSON, MacLAUGHLIN and SCOTT, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, Justice.

Plaintiffs, Merlon and Guelda Frey, commenced this action to recover damages allegedly caused by overheating from a space heater purchased from defendant, Montgomery Ward & Company, Inc. (Montgomery Ward), for use in a house trailer where plaintiffs bred and raised chinchillas for commercial purposes. Montgomery Ward then commenced a third-party action against McGraw-Edison Company (McGraw-Edison), manufacturer of the space heater, and McGraw-Edison impleaded Robertshaw Controls Company (Robertshaw), manufacturer of the space heater control unit, as a fourth-party defendant.

Before the case went to the jury, the trial court granted a motion for a directed verdict in favor of McGraw-Edison, and a motion for dismissal in favor of Robertshaw, in addition to directing a verdict against Montgomery Ward on the issue of its negligence. The jury by special verdict found plaintiffs had been damaged in the amount of $28,000 and Montgomery Ward has appealed from the entry of judgment and

from the denial of its alternative motions for judgment notwithstanding the verdict or for a new trial. We affirm in part, reverse in part, and remand.

On March 24, 1971, plaintiffs purchased a gas space heater which was on display as a floor model at the Montgomery Ward retail store in St. Paul. The space heater had been manufactured by McGraw-Edison and sold to Montgomery Ward for resale under it own label. Although the clerk who made the sale had no recollection of Frey or of the particular transaction, Frey testified that he had told the clerk of his intended use of the space heater in a house trailer where he planned to raise chinchillas for breeding and pelting purposes.

Frey took the space heater to the Salvation Army Camp on Silver Lake, in New Brighton, where he lived and worked as caretaker and maintenance man. Frey installed the space heater and vented it himself, using his own gas line and regulator connected to a supply of bottled gas. After completing the installation, Frey asked a Skelgas serviceman to inspect it and determine if the space heater had been correctly installed and was working properly.

Until February 8, 1972, the space heater operated satisfactorily, automatically maintaining the temperature in the trailer between 68 and 70 degrees. On the evening of February 7, before Mrs. Frey went to bed, she made her regular nightly visit to check on the herd of 360 chinchillas located in pens in the trailer house. The outside temperature was not unusually cold and since the temperature in the trailer was within the proper range, Mrs. Frey made no adjustment of the space heater's thermostatic control.

The next morning at 9:00 a. m., when Frey went out to the trailer, he found the temperature inside was over 110 degrees. The chinchillas in the top layer of cages, near the ceiling, were already dead and those in the cages beneath were dead or dying. Frey turned off the space heater and attempted to cool the trailer by opening the windows and doors.

Mrs. Frey called Montgomery Ward and they dispatched serviceman William O'Kasick. When he arrived, he was unable to observe any defect in the heat control unit or to ascertain whether it was operating automatically since the temperature in the trailer had dropped to less than 50 degrees. Because the space heater was still under warranty, O'Kasick replaced the Robertshaw heat control unit with one from a different manufacturer, tagged the control unit he had removed, and turned it in to Montgomery Ward's defective parts station. Montgomery Ward then returned the control unit to McGraw-Edison pursuant to a vendor charge-back procedure, but the control unit was misplaced by McGraw-Edison before plaintiffs commenced this action.

After installation of the new heat control unit, the space heater still failed to operate automatically and Frey stayed in the trailer that evening to manually adjust the heat in order to maintain the proper temperature. Shortly thereafter, a Skelgas serviceman replaced the gas line and a secondary regulator leading from the bottled gas tank because of low pressure at the burner, and O'Kasick returned to replace the heat sensor on the newly installed heat control unit. From that time on the space heater operated properly.

Frey testified that although only 32 chinchillas had died on the morning of February 8, the animals continued to get sick and die, making it necessary to dispose of 330 of them. Leroy Long, former field representative for two chinchilla promotion companies, testified that he had seen plaintiffs' rare and unusual chinchilla herd the day before the overheating occurred and that the herd had been in excellent condition. He stated that chinchillas have no tolerance for heat and become sterile or die as a result of high temperatures.

Robert Knudson, former director of engineering for heating products at McGraw-Edison, testified that in his opinion the space heater had not malfunctioned at all but rather the overheating was caused by stratification of air in the trailer, with hot air rising to the ceiling and cold air remain-

ing below in contact with the heat sensor. Knudson stated that McGraw-Edison's space heaters were not designed for use in house trailers which have inadequate insulation and that if so utilized the space heater's open combustion system could be dangerous by reason of the excessive utilization of oxygen within a tightly enclosed area.

Although McGraw-Edison furnished an owner's guide and venting instructions for use with its space heaters which contained specifications and recommendations for installation and operation, these printed booklets did not state that the space heaters should not be used in house trailers or in other poorly insulated and tightly enclosed spaces.

Before final arguments, the trial court granted McGraw-Edison's motion for directed verdict and Robertshaw's motion for dismissal, dismissing them from the action on grounds that there was no evidence to establish that the space heater was defectively manufactured or that it would have malfunctioned if properly used, i. e., not used in a house trailer. At the same time the trial court directed a verdict against Montgomery Ward on the issue of negligence because of its sale of the space heater for use in plaintiffs' house trailer, but the court asked the jury to determine whether Montgomery Ward's negligence was the proximate cause of the damages alleged by plaintiffs. The jury found by special verdict that Montgomery Ward was 100 percent negligent and that plaintiffs had been damaged in the amount of $28,000.

1. Montgomery Ward contends that the trial court committed error by directing a verdict on the issue of its negligence in the sale of the space heater to plaintiffs to be used in plaintiffs' house trailer.

■ Frey testified that he told the Montgomery Ward salesperson of his intended placement of the space heater in the house trailer where he planned to raise chinchillas and that the salesperson gave no indication that such use would be unsuitable or dangerous. We have held that in any determination of whether equipment furnished for a specific purpose is safe, the circumstances for which it is to be used are to be considered in ascertaining the negligence of the seller. Where the seller has knowledge of the particular conditions under which the equipment is to be used, knowledge of dangers which are inherent in such use may be imputed to the seller. *Manteuffel v. Theo. Hamm Brewing Co.*, 238 Minn. 140, 56 N.W.2d 310 (1952).

■ Further, when the seller knows or should anticipate that an inexperienced purchaser might use the item sold in a particular manner, the seller has a duty to warn of any dangers which might arise from that use if the seller knows or should realize that it is likely to be dangerous for such use and has no reason to believe that the purchaser will comprehend the danger. *Clark v. Rental Equipment Co. Inc.*, 300 Minn. 420, 220 N.W.2d 507 (1974).

Knudson's testimony established that the space heater sold to plaintiffs was an open combustion system, operating by gravity, and its use in a poorly insulated area could result in air stratification. Knudson stated that the space heater was inappropriate for use in such an area and was not manufactured for that purpose because of the inherent dangers of overheating and asphyxiation.

■ Although the uncontradicted testimony of a witness may be disregarded where such testimony has been impeached or made improbable by reasonable inferences drawn from the evidentiary facts, Knudson's testimony could not be arbitrarily ignored by the trial court in the absence of any inconsistent or contradictory evidence. *Nelson v. Ackerman*, 249 Minn. 582, 83 N.W.2d 500 (1957); *O'Leary v. Wangensteen*, 175 Minn. 368, 221 N.W. 430 (1928).

■ The trial court may direct a verdict for the party in whose favor the evidence overwhelmingly preponderates even though there is some evidence in favor of the adverse party. *J. N. Sullivan & Assoc. v. F. D. Chapman Const. Co.*, 304 Minn. 334, 231 N.W.2d 87 (1975). The evidence in the instant case was sufficient to establish

Montgomery Ward's duty to warn plaintiffs against improper use of the space heater in their house trailer, and the evidence was also sufficient to establish a breach of that duty based upon Montgomery Ward's imputed knowledge of the danger of such use. Therefore, the directed verdict was not error considering its limitation by the trial court solely to the issue of Montgomery Ward's negligence.

2. Montgomery Ward also contends that the evidence did not establish that the space heater caused the death of plaintiffs' chinchillas. By directing a verdict solely on the issue of negligence, the trial court properly left to the jury the determination of whether Montgomery Ward's negligent act was the proximate cause of plaintiffs' damages. Negligence and proximate cause are separate factors in assigning tort liability and the question of proximate cause is normally one for the jury to decide. *Vanderweyst v. Langford*, 303 Minn. 575, 228 N.W.2d 271 (1975).

Leroy Long, plaintiffs' expert witness, testified that chinchillas have no tolerance for heat and will die or become sterile as a result of high temperatures. Moreover, Long stated that he had seen plaintiffs' chinchilla herd on February 7, the day before the space heater overheated, and that the animals were in excellent condition. Frey gave testimony that 32 chinchillas had died on February 8 and that subsequently approximately 300 other chinchillas had died or become sick, making it necessary to dispose of them.

Because of the unique and unusual business of raising chinchillas on a commercial basis, the jury could properly take into consideration the experience and knowledge of plaintiffs' expert in determining the cause of the chinchillas' deaths. Moreover, Montgomery Ward offered no evidence to refute this testimony or to establish any other possible cause of the loss of the chinchillas.

The decision of a jury on the question of proximate cause and damages will not be set aside unless it is manifestly contrary to the evidence viewed as a whole in the light most favorable to the verdict. *Vanderweyst v. Langford, supra.* Here, the evidence was sufficient to support the jury's determination that plaintiffs' damages were proximately caused by Montgomery Ward's sale of the space heater and the subsequent overheating of the trailer.

3. Although Montgomery Ward does not take issue with the trial court's dismissal of Robertshaw, it contends that the trial court should not have directed a verdict for McGraw-Edison. Montgomery Ward argues that if it was negligent as a matter of law, then McGraw-Edison was similarly negligent by reason of its failure to include in the printed venting instruction booklet or owner's guide any warning that the space heater should not be used in a house trailer or other poorly insulated or tightly enclosed area.

It is clear from the record that McGraw-Edison had actual knowledge that its space heater, when used under such circumstances, could give rise to inherent dangers, since its own expert witness testified that the space heater, which utilizes an open combustion system, was unsafe for use in a mobile home or trailer because of the possibilities of overheating or asphyxiation.

The owner's guide and venting instructions were prepared by McGraw-Edison and approved by Montgomery Ward. The testimony revealed that use of the space heater in mobile homes and other tightly enclosed areas was not approved by the American Gas Association and that such use would be ill-advised and potentially dangerous. However, no warning of the inherent dangers of such use was set forth in the instruction booklet or owner's guide.

The duty to warn has been described as two duties: (1) The duty to give adequate instructions for safe use; and (2) the duty to warn of dangers inherent in improper usage. The distinction between the giving of adequate instructions for effective use and the giving of an adequate warning of potential danger to assure safe use is explained in 1 Frumer and Friedman, Products Liability, § 8.05(1), which states:

" * * * It is clear from the better-reasoned cases that directions for use, which merely tell how to use the product, and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn."

We have held that where the manufacturer or the seller of a product has actual or constructive knowledge of danger to users, the seller or manufacturer has a duty to give warning of such dangers. *Hill v. Wilmington Chemical Corp.,* 279 Minn. 336, 156 N.W.2d 898 (1968); Annotation, 76 A.L.R.2d 9. As we stated in *Lovejoy v. Minneapolis-Moline Power Implement Co.,* 248 Minn. 319, 325, 79 N.W.2d 688, 693 (1956):

" * * * If the manufacturer undertakes by printed instructions to advise of the proper use to be made of a chattel, he assumes the responsibility of giving accurate and adequate instructions with respect to the dangers inherent in its use in some other manner."

See, *Johnson v. West Fargo Manufacturing Co.,* 255 Minn. 19, 95 N.W.2d 497 (1959); *Hartmon v. National Heater Co.,* 240 Minn. 264, 60 N.W.2d 804 (1953).

This court distinguished between operational instructions and warnings of inherent danger in the use of a chattel in *Westerberg v. School District No. 792,* 276 Minn. 1, 148 N.W.2d 312 (1967), but recognized the necessity of a limitation on the manufacturer's duty to warn and on the manufacturer's liability in the retail sale of his products. We held that the manufacturer's duty to warn must rest on foreseeability, with no duty to warn of an improper use that could not have been foreseen.

The owner's guide and the venting instruction booklet supplied by McGraw-Edison with its space heaters gave adequate directions for proper and effective use. However, the booklets had no warning to assure safe use or to caution of the dangers of misuse by placement of the space heaters in house trailers or in other small, tightly enclosed or poorly insulated areas.

Whether McGraw-Edison reasonably could have foreseen or anticipated the use of its space heaters in house trailers

and thus whether the risk for which there was no warning was a reasonably foreseeable one was properly a jury question. By directing a verdict in favor of McGraw-Edison, the trial court took from the jury the right to determine this question. A trial court is not justified in directing a verdict if different minds, applying the legal criteria of due care, might reasonably arrive at different conclusions. *Stenzel v. Bach,* 295 Minn. 257, 203 N.W.2d 819 (1973). Thus, the question of McGraw-Edison's duty to warn must be remanded for a new trial.

If McGraw-Edison is therein found to have acted without due care, the question of the proper allocation of liability between McGraw-Edison and Montgomery Ward arises. In *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 372, 104 N.W.2d 843, 848 (1960), we reviewed our decisions concerning indemnity between joint tortfeasors and adopted the following rules:

" * * * A joint tortfeasor may generally recover indemnity only in the following situations:

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

"(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

"(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

"(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved."

We leave it to the trial court to determine whether the instant case falls within Rule 3, as suggested by Mr. Justice Kelly in his concurring opinion, or whether it falls

within Rule 4. If found to be a Rule 4 situation, then we direct the attention of the court below to our recent decision in *Tolbert v. Gerber Industries, Inc.,* Minn., 255 N.W.2d 362 (1977).

We affirm the judgment as to the dismissal of the claim against Robertshaw, the directed verdict against Montgomery Ward on the issue of negligence, and the award of damages to plaintiffs. However, the directed verdict in favor of McGraw-Edison is reversed and remanded for a new trial.

Affirmed in part, reversed in part, and remanded.

KELLY, Justice (concurring specially).

I concur in the result reached by the court, but add my own remarks because little guidance appears offered the trial court if it must apportion liability between Montgomery Ward and McGraw-Edison. The majority invokes the rule of *Tolbert v. Gerber Industries, Inc.,* Minn., 255 N.W.2d 362 (1977), that liability is to be apportioned according to the relative culpability of joint tortfeasors. The ambiguity of the rule in these circumstances prompts this concurrence.

It might be thought that the majority intends that each party's negligence in failing to warn plaintiffs of the danger of using the space heater in their house trailer is the culpability to be compared. We affirm a directed verdict that Montgomery Ward was negligent in selling a space heater to plaintiffs because of its imputed knowledge of the dangers inherent in plaintiffs' proposed use of the heater. If McGraw-Edison was negligent, its failing consisted of omitting from its owner's guide and venting instruction manual a warning against use of the space heater in a confined area. Thus, even if plaintiffs had purchased the heater intending its use in their house trailer, such a warning might

have caused them to return their purchase and thereby avert the damages suffered. The negligence of the parties in this respect is relatively clear and comparable. But a comparison of the parties' conduct vis-a-vis plaintiffs ignores the relationship of the parties in the chain of distribution and arguably is not determinative of their relative culpability.

Montgomery Ward argues on appeal that McGraw-Edison breached an implied warranty of merchantability of fitness for the ordinary purposes for which such goods are used by failing to warn Montgomery Ward of the dangers of using the space heater in confined spaces or by failing to provide an instruction manual containing such a warning. The Uniform Commercial Code envisions that the implied warranty of merchantability may run to a purchaser who will resell the goods.[1] Moreover, defective instructions accompanying the product may breach this warranty. *Reddick v. White Consolidated Industries, Inc.,* 295 F.Supp. 243 (S.D.Ga.1969). Other courts have found indemnity justified if a breach of warranty by a manufacturer subjects a retailer to liability. E. g., *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87 (3 Cir. 1969); *Safeway Stores, Inc. v. L. D. Schreiber Cheese Co. Inc.,* 326 F.Supp. 504 (W.D.Mo.1971), reversed on other grounds, 457 F.2d 962 (8 Cir. 1972); *Davis v. Radford,* 233 N.C. 283, 63 S.E.2d 822 (1951). See, 11 Williston, Contracts, § 1355 (3 ed. 1968). Indeed, this court has so held. *Liberty Mutual Insurance Co. v. J. R. Clark Co.,* 239 Minn. 511, 59 N.W.2d 899 (1953).

The majority opinion is silent concerning the possibility that McGraw-Edison breached the warranty of merchantability. If Montgomery Ward's argument went unmentioned because it was not appropriately asserted in the trial court, there is some merit in the omission. Montgomery Ward failed to assert the warranty vigorously

---

1. Minn.St. 336.2–314, U.C.C. Comment 8, 21A M.S.A. p. 306, provides in part: "[M]erchantability is also a part of the obligation owing to the purchaser for use. Correspondingly, protection, under this aspect of the warranty, of the person buying for resale to the ultimate consumer is equally necessary, and merchantable goods must therefore be 'honestly' resalable in the normal course of business because they are what they purport to be." See, also, Minn.St. 336.2–607(5).

during argument on the motion of McGraw-Edison for a directed verdict and the matter did not attract the attention of the court. Nevertheless, Montgomery Ward did raise the warranty issue in its answer to plaintiffs' complaint, in its motion for a new trial, and in its brief to this court. In light of its pleading, I think that Montgomery Ward adequately preserved its contention by referring during argument on McGraw-Edison's motion for a directed verdict to McGraw-Edison's duty to warn it of inappropriate uses.[2]

I assume that because of an absence of a statement to the contrary in the majority opinion, if liability is to be apportioned Montgomery Ward will be permitted on remand to prove a breach of an implied warranty by McGraw-Edison. It should also be permitted to demonstrate that as between McGraw-Edison and itself very little or no culpability is attributable to Montgomery Ward in connection with plaintiffs' damages. Indeed, were it not for the decision in *Tolbert v. Gerber Industries, Inc., supra,* I would hold that Montgomery Ward is entitled to indemnity from McGraw-Edison as a matter of law.

Retailers generally are at the mercy of manufacturers with respect to knowledge of dangers that inhere in the products they sell. Standing at the head of the stream of commerce, we may presume a manufacturer to be familiar with its product and the dangers it presents the public. Not only is it reasonable for a retailer to rely on the manufacturer's greater knowledge of its product, but that reliance is recognized by the law of implied warranties. It would hardly be commercially expedient for a retailer to examine, test, and otherwise scrutinize a manufacturer's products before resale. *Dobias v. Western Farmers Assn.,* 6 Wash.App. 194, 491 P.2d 1346 (1971). Retail sales clerks often lack expertise and are subject to frequent turnover. In many instances they cannot be expected to know more about a product than the information included in the manufacturer's instruction manual. In the instant case, it is more obvious that the average clerk in a retail store would have no conception of the dangers testified to by the expert from McGraw-Edison. As the majority opinion recognizes, McGraw-Edison had actual knowledge of the hazard plaintiffs encountered. Such knowledge could only be imputed to Montgomery Ward.[3]

I do not mean to imply that Montgomery Ward was not negligent as to plaintiffs. But the perspective from which one evaluates a retailer's culpability differs with its position as a distributor or purchaser in the chain of distribution. A retailer may be liable to a consumer by breaching a duty to inspect and protect the consumer from

---

**2.** Counsel for Montgomery Ward argued: "As to the motion of the third-party defendant McGraw-Edison Company, it's clear from the evidence that if there was a misappropriate application, the instructions from McGraw-Edison Company to Montgomery Ward & Co. do not advise that such would be a misappropriate application. There is not one word in the instructions to the effect that this space heater could not be used in a trailer or in any other situation.

"On that basis, if Montgomery Ward & Co. is found negligent for failing to advise the plaintiff in this respect * * * it is the position of Montgomery Ward & Co. that the third-party defendant McGraw-Edison Company is equally liable and obligated to Montgomery Ward & Co. for the same negligence."

Somewhat later, he added: "My position is that if the McGraw-Edison Company had a duty to, in view of their preparation and enclosure with this heater, have instructions on use, to state the improper applications of this space heater to the extent that Montgomery Ward would have such a duty."

**3.** The instant case is somewhat unusual in that Montgomery Ward participated in the design of the space heater. It selected the styling and control equipment features, leaving McGraw-Edison to set the design specifications. It also approved the owner's guide and venting instructions, which were prepared by McGraw-Edison. Although it is the jury's function under *Tolbert v. Gerber Industries, Inc.,* Minn., 255 N.W.2d 362 (1977), to determine Montgomery Ward's culpability, I do not perceive how Montgomery Ward's choice of style and control features makes it any more conscious of dangers than an ordinary retailer would have been. Furthermore, mere approval of owner's instructions not containing the warning in question hardly indicates greater culpability.

goods he sells. Yet, as between the retailer and the manufacturer, there may be no negligence because of reasonable reliance on the warranties and expertise of the manufacturer.[4] Indeed, in such a circumstance, the retailer would seem entitled to indemnity from the manufacturer under Rule 3 of *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 372, 104 N.W.2d 843, 848 (1960), which provides: "A joint tortfeasor may generally recover indemnity * * * (3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged." The *Tolbert* case explicitly preserved this principle of indemnity.

The majority in *Tolbert* noted that the "current rule on indemnity * * * presents a trial court with a bewildering array of issues." Unfortunately, the court has exchanged this array of issues for a single amorphous question—determination of the relative culpability of the joint tortfeasors—and failed to indicate a coherent manner in which trial judges may present the question to the jury. The dissenting opinions in *Tolbert* attempted to demonstrate the problems in this approach and suggest factors relevant to the determination of relative culpability. My concurrence today merely embodies an attempt to indicate additional factors that I deem relevant in this particular circumstance. It seems to me inescapable that the parties' relative culpability can be determined only after examining their respective positions in the chain of distribution.

TODD, Justice (concurring specially).

I join in the concurring opinion of Mr. Justice Kelly.

YETKA, Justice (concurring specially).

I join in the concurring opinion of Mr. Justice Kelly.

---

4. The difference is exemplified in a strict liability case where the retailer is liable to the consumer even absent culpability on its part. *Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 179 N.W.2d 64 (1970). The instant case proceeded on the theory of strict liability until plaintiffs amended their complaint to substitute negligence near the end of trial.