Steven W. ZIEMINSKI, et al.,
Respondents,

v.

Raymond CAAUWE, et al., Appellants.

No. C8-84-272.

Court of Appeals of Minnesota.

Sept. 11, 1984.

Max H. Hacker, Schwebel, Goetz, Sieben & Hanson, P.A., Minneapolis, for respondents

James T. Martin, John E. Varpness, Gislason & Martin, P.A., Edina, for appellants.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

LANSING, Judge.

This is a personal injury action arising out of an automobile accident in March 1976. A jury returned a special verdict finding that (1) appellant was 65 percent and respondent was 35 percent at fault; (2) respondent did not sustain a permanent injury; (3) respondent did incur medical expenses in excess of $2,000; and (4) respondent's damages were $65,000. The court entered judgment for respondent in the amount of $42,250. Appellants contend that the verdict was inconsistent, irreconcilable and excessive as a matter of law. We affirm.

## ISSUES

1. Did the trial court abuse its discretion in refusing to grant a new trial because the special verdict is inconsistent and irreconcilable?

2. Did the trial court abuse its discretion in refusing to grant a new trial because the jury award is excessive as a matter of law?

## FACTS

In March 1976 Steven Zieminski was driving his station wagon when he was rear-ended by appellant Raymond Caauwe. Caauwe was driving a fully loaded Coca Cola truck weighing about 64,000 pounds. Caauwe was substituting for a sick driver and had never driven a loaded truck before. The impact speed was never ascertained. There was external damage to the rear of Zieminski's car, and the front seat latch broke from the force of his body.

Zieminski was shaken up but initially did not think he was injured. He and Caauwe exchanged names at the scene. The next day Zieminski went to see his family doctor because of swelling and pain in the neck, shoulder, and upper back. His family doctor referred him to Dr. Ault, an orthopedic surgeon. In April 1976 Dr. Ault found that Zieminski had cervical muscle spasms and a 50 percent limitation in ability to rotate his head. He diagnosed a severe cervical sprain and prescribed heat treatment, aspirin, and exercises to improve neck motion.

Zieminski saw Dr. Ault several times from April to October 1976. At that time Dr. Ault told him that despite the continuing pain and loss of motion, future appointments would not be necessary unless Zieminski's condition changed significantly. Dr. Ault testified at trial:

> I felt that he had been instructed pretty well in everything I could tell him about the problem at that point, and that from then on, he would really have to live with his symptoms and try to adjust his activities accordingly.

Zieminski did not see another doctor until February 1980. During that three-year period he continued to have pain, loss of motion, and difficulty in performing overhead work. Shortly after the accident Zieminski became a partner in a construction company. His former partner testified that after the accident he could see that certain work made Zieminski uncomfortable, and he frequently saw Zieminski rubbing and stretching his neck.

When the partnership dissolved in August 1979, Zieminski applied for and received a job with the Burlington Northern Railroad. Zieminski did not tell the company about his neck injury because he was afraid he would not get the job.

At his wife's insistence Zieminski saw another doctor in February 1980. Dr. Svendsen, also an orthopedic surgeon, found that Zieminski's neck extension and rotation were limited. X-rays showed loss of cervical curvature, which Dr. Svendsen interpreted as loss of flexibility in the neck. Dr. Svendsen diagnosed the injury as chronic cervical myofascial strain and possible facet joint syndrome. He believed that the injuries were permanent and that Zieminski was at increased risk for degenerative problems in the cervical spine area. Dr. Svendsen's deposition was recorded on videotape and shown to the jury.

In May 1980 Zieminski began seeing Dr. Harden, a chiropractor. Dr. Harden continued to treat Zieminski through the date of trial. Dr. Harden's diagnosis was essentially the same as the other physicians: chronic severe cervical thoracic strain/sprain syndrome with degenerative joint disease of the cervical spine. Dr. Harden was also deposed, and the videotape was also shown to the jury.

In February 1981 Zieminski returned to Dr. Ault, who found a 20 percent limitation in rotation ability and some limitation in lateral head movement. Dr. Ault also testified that Zieminski's neck muscles seemed small in comparison to other muscles in the upper extremities, possibly indicating that they were used less because of pain. Dr. Ault said he did not think Zieminski had a permanent disability, but he did think Zieminski had sustained a severe, chronic injury to the neck muscles and ligaments.

Finally, one of Zieminski's co-workers testified about Zieminski's difficulty in doing overhead work and demonstrated how he would tease Zieminski by imitating the stiff way in which he rotated his entire body in order to look to the right or left.

## ANALYSIS

### I

■ Caauwe and his employer contend that the finding of no permanent injury is inconsistent and irreconcilable with an award of $65,000 in damages. They cite *Carufel v. Steven*, 293 N.W.2d 47 (Minn. 1980), in support of this position. In *Carufel* the court granted a new trial because the jury awarded damages after determining that the plaintiff had not suffered a permanent injury.

Appellant's reliance on *Carufel* is misplaced. In that case the jury failed to find that the plaintiff had met *any* of the tort thresholds under the No-Fault Act, Minn. Stat. § 65B.51, subd. 3 (1982). *Carufel* does not stand for the principle that a finding of permanent injury is always necessary to support a damages award.

In the present case the trial court submitted two threshold questions to the jury: permanent injury and medical expenses in excess of $2,000.[1] *See* Minn.Stat. § 65B.51, subd. 3 (1982). Because the jury found that Zieminski met the medical expense threshold, it could then determine his damages. The trial court correctly ruled that there was no real inconsistency in the verdict for this reason.

### II

The real issue, as found by the trial court, is whether the verdict is excessive as a matter of law because it is not justified by the evidence.

Appellants belittle Zieminski's injury as subjective and unsubstantial because there was no wage loss or hospitalization. Those are not the sole criteria for evaluating an injury that is, according to appellant's own medical testimony, difficult to diagnose and treat. An orthopedic surgeon and a chiropractor testified that Zieminski had sustained a permanent injury. Appellant's witness, Dr. Ault, testified that although he felt there was no *permanent disability*, Zieminski continued to suffer from a chronic cervical sprain. All three physicians testified that there was objective evidence of the injury.

---

1. The current requirement of $4,000 in expenses applies only to injuries occurring after August 1, 1978. *See* Act of March 28, 1978, ch. 711, § 2, 1978 Minn.Laws 681, 682.

Randall Loring, Zieminski's former partner, testified that he has had an "uncomfortable" relationship with Zieminski since their partnership dissolved. Nevertheless, Loring testified that before the accident Zieminski was physically very strong and in excellent condition. Afterward, Zieminski had trouble carrying heavy construction materials. He rubbed his neck so frequently that "it failed to register anymore" with Loring. Appellant's own lawyer elicited the statement from Loring that Zieminski was "not much given to complaints" and generally "[took] things in stride."

Appellants particularly stress the fact that Zieminski did not see a doctor between October 1976 and February 1980 and that he did not inform Burlington Northern about the injury when he sought employment. These facts are entirely understandable. Dr. Ault told him that little could be done for his injury, and his desire to be employed explains the nondisclosure to Burlington Northern. Furthermore, the jury could have concluded that Zieminski was the kind of person who would not continually seek treatment but would try to adjust to the discomfort, as Dr. Ault suggested.

Finally, although there was no loss of income included in the verdict, under the No-Fault Act Zieminski is entitled to recover for all noneconomic detriment, including pain and suffering, loss of consortium, and inconvenience. *See* Minn.Stat. § 65B.43, subd. 8 (1982).

The discretion to grant a new trial on the ground of excessive damages rests with the trial court, whose determination will only be overturned for abuse of that discretion. *Advanced Training Systems, Inc. v. Caswell Equipment Co.*, 352 N.W.2d 1, at 11 (Minn.1984) (citing *Stenzel v. Bach*, 295 Minn. 257, 261, 203 N.W.2d 819, 822 (1973)). The trial court found that the jury could reasonably have concluded that $65,000 would fairly compensate Zieminski for his injury, and we agree. The court's refusal to grant a new trial was not an abuse of discretion.

## DECISION

The trial court did not err in refusing to grant a new trial because the verdict was neither inconsistent nor excessive.

Affirmed.