## J. N. SULLIVAN AND ASSOCIATES, INC.
## v. F. D. CHAPMAN CONSTRUCTION
## COMPANY AND OTHERS.

231 N. W. 2d 87.

June 13, 1975—No. 44549.

*Thomson, Lovett, Wahlfors & Moran* and *James L. Wahlfors,* for appellants.

*Briggs & Morgan, B. C. Hart,* and *Marvin T. Fabyanske,* for respondent.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

J. N. Sullivan and Associates, Inc. (Sullivan) initially brought this action against F. D. Chapman Construction Co. (Chapman) and several other defendants to recover damages for breach of contract and negligence. The trial court granted Sullivan's motion for a directed verdict against Chapman and defendant Glens

Falls Insurance Company, which had furnished a performance and payment bond for Chapman. We affirm.

In 1967, the village of Circle Pines and Chapman entered into a contract for the construction of a sewer line within the village. Sullivan served as consulting engineers for the village during both the planning and construction of the extensive sewer project, providing inspection and supervision during construction. According to the plans and specifications prepared by Sullivan, it was also responsible for the final approval inspection upon completion. Construction was finished in October 1967 and the village, relying on Sullivan's recommendation, accepted the completed sanitary sewer line.

Beginning in the spring or early summer of 1968, the village began experiencing a sewage backup and flowage problem in the area of manhole 82B of the sewer line that Chapman had constructed. This problem grew continuously worse until the village had to flush out the backup every two or three weeks.

In 1970, Sullivan discovered that it would be necessary to dig up a portion of the sewer line in this area in order to identify and correct the problem. Sullivan contacted Chapman and its surveyor and requested that Chapman do this excavation and subsequent corrective measures at its own expense, which it refused to do.

Sullivan, at its own expense, had a survey crew determine the elevation of the bottoms of manhole 82B and of the upstream and downstream manholes, and then had 168 feet of sewer pipe downstream from the target manhole excavated. The cause of the problem was found to be that the pipe was below the design grade, creating a bend in the line which impeded the flow of the sewage.

After receiving an assignment from the village, Sullivan commenced this action against Chapman, LeRoy Winner, who was the surveyor, Glens Falls, and others for the cost of repairs, alleging negligent construction and failure to construct the sewer line in accordance with the original contract and specifications

as required. Following a change of venue and dismissal of two of the defendants, the claims against Chapman and its surveyor were tried to a jury. During the third day of trial, upon the recommendation of the trial judge and the consent of all parties, testimony was interrupted for the purpose of permitting motions for directed verdict against Chapman on behalf of Sullivan, and against both Chapman and Sullivan on behalf of Winner. Counsel for both Sullivan and Chapman submitted offers of proof in support of their positions. Both motions were granted by the trial judge, and Chapman and Glens Falls appeal from the judgment entered against them.

The only issue on this appeal is whether, in view of all the evidence and offers of proof presented, the trial judge erred in directing a verdict in favor of Sullivan.

It is well settled that a motion for a directed verdict pursuant to Rule 50, Rules of Civil Procedure, presents only a question of law for the trial court regarding the sufficiency of the evidence to present a fact question for the jury to decide.[1] The test to be applied by the lower court and this court on review is that the motion should be granted only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.[2] Despite the fact that a motion for a directed verdict admits for the purposes of the motion the credibility of the evidence for the adverse party and every inference which may be fairly drawn from such evidence, a court should direct a verdict in favor of the party in whose favor the evidence overwhelmingly preponderates even though there is some evidence in favor of the adverse party. Not every conflict in the evidence gives rise to a jury question.[3]

---

[1] Jacoboski v. Prax, 290 Minn. 218, 187 N. W. 2d 125 (1971).

[2] Stenzel v. Bach, 295 Minn. 257, 203 N. W. 2d 819 (1973).

[3] Kolatz v. Kelly, 244 Minn. 163, 69 N. W. 2d 649 (1955); Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. 2d 637 (1951).

Appellants in their brief concede, as they must, that "[t]he present case involves the construction of a sewer line pursuant to detailed plans and specifications provided by the Owner. It is clear that the Contractor's only duty was to comply with the requirements of those plans and specifications * * *." However, they assert that Chapman did not assume responsibility for the stability of the soil supporting the sewer line. This assertion is of no help to Chapman as it is obvious from all of the evidence that the dip in the sewer line was not caused by settling but rather by construction below the grade required by the plans and specifications. We shall now summarize briefly the evidence presented which we feel supports the inference that Chapman failed to perform according to the terms of the contract, that is, that the pipeline problem was caused by Chapman's act of laying the line below the design elevation in the first place.

Joseph Sullivan, president of the plaintiff engineering firm, gave considerable testimony that this particular manhole and section of sewer pipe had been originally constructed at the elevation at which they were found when unearthed in 1970. This was as much as 15 inches below the grade specified in the plans and specifications.

Wayne Dannheim, the village administrator, also testified that on his several visits to the affected area during 1968 to 1970, he never noticed any evidence of ground settlement, which Chapman theorizes could be a cause of the pipe sinking.

To rule out settlement as a cause, Mr. Sullivan testified that prior to construction, several soil test borings had been taken by an independent firm, Twin City Testing, including one in the area where the problem arose (manhole 82B). Based on the results of that test, it was Mr. Sullivan's expert opinion that the pipe would not have sunk in this supporting soil. We also take note of the fact that the problem at 82B arose in the spring of 1968, only a few months after the work was completed. It is highly improbable that manhole 82B would have settled almost

a foot and that the sewer line at one point could have settled 15 inches in so brief a period of time.

Furthermore, when the manhole and sewer pipe were unearthed in 1970, no evidence of settlement, such as cracks or broken joints, was observed.

Chapman offered to prove that the sewer line had been constructed properly in 1967 by testimony that the manhole and sewer line had been laid in accordance with Chapman's own surveyor's grade stakes. However, Chapman did not offer proof that its surveyor had placed his stakes at the elevations as required by the plans and specifications. Without proof or an offer of proof that the surveyor's stakes were set correctly, the offers of proof by Chapman were inadequate to create any type of factual issue for the jury to decide. Nothing was offered which would go toward rebutting the vast bulk of evidence adduced that Chapman constructed this section of sewer pipe below the designed grade in 1967.

The judgment is affirmed.

Affirmed.