*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2029**

Lee D. Weiss,
Plaintiff,

Weiss Capital Real Estate Group, LLC,
Respondent,

vs.

Private Capital, LLC, et al.,
Appellants.

**Filed August 25, 2014
Reversed and remanded
Peterson, Judge**

Hennepin County District Court
File No. 27-CV-10-20197

Michael Paris, Nystrom, Beckman & Paris LLP, Boston, Massachusetts; and

Eric R. Sherman, Vernle C. Durocher, Jr., Dorsey & Whitney, LLP, Minneapolis, Minnesota (for respondent)

Bruce G. Jones, Tyler A. Young, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Connolly, Judge.

**PETERSON**, Judge

In this appeal from the denial of their motion for judgment as a matter of law, appellants argue that respondent's conversion claim fails because it does not allege a tort independent of the parties' contract; in the absence of an independent tort, punitive damages may not be awarded; and the evidence does not support the damages awarded for breach of contract. We reverse and remand.

## FACTS

Lee Weiss is a financial professional with more than 20 years of experience in the financial-services industry. In June 2007, Weiss decided to invest in appellant Private Capital, LLC, a real-estate-development company focused on properties in North Carolina. Weiss formed respondent Weiss Capital Real Estate Group, LLC, for the purpose of making the investment.

On June 28, 2007, Private Capital's manager, appellant K. Scott Fischer, sent Weiss an e-mail that states:

> Attached is the Operating Agreement for Private Capital LLC and Schedule A reflecting the future ownership. . . . To confirm our conversation this morning, you will invest $500,000 into Private Capital LLC which will entitle you to 1) a 25% return on that capital until it is repaid, and 2) 18% of all profits on any Private Capital deals (other than Derbyshire, which has its own separate arrangement).

Weiss read the attached Private Capital operating agreement, signed it, and sent it back to Fischer. The operating agreement states:

> Without the consent of the Manager, no Member shall be entitled to a return of its Capital Contributions except by way of the distribution to it of assets upon the dissolution of the Company pursuant to the provisions of this Agreement. No interest shall be allocated to any Member on the amount of its Capital Account.

On August 23, 2007, Weiss Capital wired $250,000 to Fischer. Fischer allocated $75,000 of that amount to Vein Mountain, LLC, a landholding company for which Private Capital was the developer, and $175,000 to Private Capital. At Fischer's request, Weiss agreed to advance an additional $750,000 to Private Capital as a loan. On September 17, 2007, Weiss Capital wired $1 million to Private Capital's bank account ($250,000 to complete the $500,000 equity investment and $750,000 for the loan). Fischer allocated $500,000 of that amount as an equity stake in Vein Mountain and $500,000 as an equity stake in Camp Creek, another company for which Private Capital was the developer. Weiss admitted that he signed Camp Creek's operating agreement and a conditional guarantee to permit Camp Creek to obtain a loan, but he testified that he signed the documents in his capacity as a partner in Private Capital.

In October 2008, Weiss received partnership tax statements for Vein Mountain, Camp Creek, and Private Capital. The tax statements showed that Weiss Capital had a $175,000 equity interest in Private Capital, a $925,000 equity interest in Camp Creek, and a $550,000 equity interest in Vein Mountain. Weiss testified that he was surprised to receive the tax statements for Vein Mountain and Camp Creek because he never agreed to invest in those companies. Weiss testified that he was shocked that the tax statement for Private Capital showed only a $175,000 investment in that company. Weiss sent a

3

letter to Fischer stating that he disagreed with the allocation of profit, loss, capital, and liability in the tax statements that he received.

Weiss and Weiss Capital brought this lawsuit against appellants alleging a breach-of-contract claim against Private Capital and claims for unjust enrichment, conversion, and fraud against Private Capital and Fischer. Weiss and Weiss Capital sought punitive damages against both Private Capital and Fischer. The case was tried to a jury. The district court granted appellants' motion for a directed verdict on Weiss's and Weiss Capital's claims that appellants fraudulently induced Weiss and Weiss Capital to invest in Private Capital. The jury found Private Capital and Fischer liable to Weiss Capital for conversion and awarded $500,000 in damages. The jury found that Private Capital breached its contract with Weiss Capital and awarded $620,000 in damages. Before the punitive-damages phase of trial, Weiss and Weiss Capital agreed that they would not proceed with a punitive-damages claim against Private Capital. The jury awarded $500,000 in punitive damages against Fischer.

Appellants moved for judgment as a matter of law (JMOL) on multiple grounds, including that Weiss Capital was barred from seeking tort damages and there was no evidence to support the damages award for the breach-of-contract claim. The district court denied appellants' motion and ordered judgment for Weiss Capital in the amount of $620,000 against Private Capital for breach of contract, $500,000 against Private Capital and Fischer on the conversion claim, and $500,000 against Fischer for punitive damages. The district court awarded Weiss Capital $427,475 in attorney fees and $110,834 in costs against Private Capital. Judgment was entered accordingly. This appeal followed.

4

**DECISION**

This court reviews the district court's denial of JMOL de novo. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009). JMOL should be granted:

> only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the [district] court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Jerry's Enters., Inc., v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quoting *J.N. Sullivan & Assocs., Inc. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)); *see also Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d 541, 549 (Minn. App. 2011), *aff'd* 816 N.W.2d 572 (Minn. Jul. 18, 2012). In denying appellants' motion for JMOL, the district court rejected appellants' arguments that Weiss Capital was barred from seeking tort damages and that there was no evidence to support the damages awarded for the breach-of-contract claim.

**I.**

A party may not recover tort damages for a breach of contract, "except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." *Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975) (citations omitted); *see also Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (stating that "[b]ecause of the differences between tort and contract actions, '[w]hen a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence.'" (quoting *United States v. Johnson*, 853 F.2d 619, 622 (8th Cir. 1988)).

5

"When the gravamen of the complaint is the breach of contract, the plaintiff may not recover tort damages." *McNeill & Assocs., Inc. v. ITT Life Ins. Corp.*, 446 N.W.2d 181, 185 (Minn. App. 1989), *review denied* (Minn. Dec. 1, 1989). "The issue becomes whether there is a breach of duty which is distinct from the breach of contract. . . . The test is whether a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. App. 1992), *review denied* (Minn. Feb. 12, 1993). The existence of a legal duty independent of the contract is a question of law, which is reviewed de novo. *Id.* at 307.

"Conversion is the wrongful exercise of dominion or control over the property of another." *Bates v. Armstrong*, 603 N.W.2d 679, 682 (Minn. App. 2000), *review denied* (Minn. Mar. 14, 2000). "Conversion may be established by proof of some act that changes the character of the property or permanently deprives the owner of it." *Id.*

Weiss Capital's conversion claim is that appellants changed Weiss Capital's $500,000 equity investment in Private Capital into equity in other entities.[1] To recover tort damages for this claim, Weiss Capital needed to show that changing the character of its equity investment in Private Capital breached a duty that arose from a relationship between Weiss Capital and Private Capital, rather than from a contractual duty.

The district court concluded that, because changing the character of Weiss Capital's investment was a separate wrong independent of Private Capital's contractual

---

[1] The allegation in the second amended complaint is that "without Weiss' knowledge or consent, the defendants took $325,000 of Weiss' $500,000 capital investment in Private Capital and converted it into a capital investment in Camp Creek."

6

duty to pay Weiss Capital interest on its investment,[2] Weiss Capital's conversion claim was not barred. But the fact that changing the character of Weiss Capital's investment and failing to pay interest on the investment were separate, independent wrongs does not mean that changing the character of the investment breached a duty that was independent of the parties' contract.

Weiss Capital has not identified any duty independent of the parties' contract that was breached by changing the character of its equity investment in Private Capital. Section 6.2(a) of the operating agreement states that "[a] separate Capital Account shall be maintained for each Member. Each Member's Capital Account shall be (a) credited with (i) the amount of money contributed by such Member . . . and (b) debited with (i) the amount of money distributed to such Member." Under this provision, appellants had a duty to credit Weiss Capital's capital account with $500,000, which was the amount of money that Weiss Capital contributed to Private Capital. This duty was separate from any duty to pay interest on the investment, but both duties arose from the contractual relationship created by the operating agreement, not from some other relationship.

Weiss Capital argues that appellants breached an independent legal duty to not interfere with the property rights of another.[3] But the specific property right that Weiss

---

[2] We will address below whether Private Capital had a contractual duty to pay Weiss Capital interest.

[3] Citing *Fawcett v. Heimbach*, 591 N.W.2d 516, 518-19 (Minn. App. 1999), Weiss Capital argues that pledging or disposing of another's equity in a company is conversion, even when the parties' relationship is governed by a contract. But in *Fawcett*, this court did not address whether the conversion was an independent tort distinct from any breach

7

Capital claims that appellants interfered with is Weiss Capital's right to have its $500,000 allocated as a capital investment in Private Capital. This right does not exist independently from the operating agreement, and the gravamen of the conversion claim is that Private Capital did not allocate Weiss Capital's money as required under the operating agreement, which is a breach-of-contract claim.

Weiss Capital may not recover tort damages by claiming that appellants interfered with its property rights and simply ignore that the operating agreement is the source of those rights. The test set forth in *Hanks* is that there must be a "legal duty without enforcement of the contract promise itself." 493 N.W.2d at 308. The only basis in the record for concluding that appellants interfered with Weiss Capital's property rights by allocating part of the $500,000 to equity in entities other than Private Capital is that appellants had a contractual duty under the operating agreement to allocate the $500,000 only to equity in Private Capital. Consequently, the duty to not interfere with the property rights of another cannot be enforced without also enforcing the contractual duty. We, therefore, reverse the denial of appellants' motion for JMOL on respondent's conversion claim and remand for entry of judgment in appellants' favor on that claim.

## II.

Even if a contract is breached maliciously, punitive damages will not lie unless the maliciousness constitutes an independent tort. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 52-53 (Minn. 1983). Because Private Capital's failure to allocate Weiss

---

of contract; the principal issue was the measure of damages for the conversion. *Fawcett* does not support Weiss Capital's argument.

Capital's $500,000 as a capital investment in Private Capital does not constitute an independent tort, it will not support an award of punitive damages. We, therefore, reverse the denial of Fischer's motion for JMOL on respondent's claim for punitive damages and remand for entry of judgment in Fischer's favor on that claim.

**III.**

Private Capital argues that the jury's $620,000 damages award on Weiss Capital's contract claim should be reversed because no evidence supports the award. "In a breach of contract action, [the plaintiff] has the burden of proving not only breach, but that damages arose from the breach." *D.H. Blattner & Sons, Inc., v. Firemen's Ins. Co. of Newark, New Jersey*, 535 N.W.2d 671, 675 (Minn. App. 1995), *review denied* (Minn. Oct. 18, 1995). "The law does not require mathematical precision in proof of loss, but only proof to a 'reasonable, although not necessarily absolute, certainty.'" *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826, (Minn. 1977) (quoting *N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 125, 211 N.W.2d 159, 166 (1973)).

Weiss Capital claimed that Private Capital breached the parties' contract when it allocated as a capital investment in Private Capital only $175,000 of the $500,000 wired to Private Capital and allocated the remaining $325,000 as an equity investment in another entity. Private Capital contends that, because it is undisputed that Weiss Capital owns an 18 percent interest in Private Capital, the only thing that would have been different if this breach had not occurred is that Weiss Capital would have $500,000, rather than $175,000, allocated to its Private Capital capital account. Private Capital argues that because Weiss Capital presented no evidence that would have permitted the

9

jury to calculate the pecuniary value of the difference between having $175,000 allocated to its capital account and having $500,000 allocated to its capital account, the damages award for breach of contract has no evidentiary basis in the record.

The district court rejected Private Capital's argument that Weiss Capital needed to present evidence of the loss caused by misallocating Weiss Capital's $500,000 because it reasoned that "[t]he jury's verdict instead appears to be based on Exhibit 13. That exhibit promised Weiss Capital 25% interest on $500,000, and $620,000 represents almost exactly 25% interest between the time Weiss Capital deposited $500,000 and when this suit occurred."

Exhibit 13 is a June 28, 2007, email from Fischer to Weiss, which states:

> Thanks for your time on behalf of Private Capital LLC. Attached is the Operating Agreement for Private Capital LLC and Schedule A reflecting the future ownership. . . . To confirm our conversation this morning, you will invest $500,000 into Private Capital LLC which will entitle you to 1) a 25% return on that capital until it is repaid, and 2) 18% of all profits on any Private Capital deals (other than Derbyshire, which has its own separate arrangement). Please contact me with any questions.

The district court determined that the Private Capital operating agreement gave Fischer the right to make investment decisions and agreements, "which the jury could have found included the promise made in Exhibit 13."

But construction of an unambiguous contract presents a question of law; a fact-finder determines the terms of an ambiguous contract, but no such determination is necessary for an unambiguous contract, such as Exhibit 13 and the Private Capital operating agreement. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn.

10

2003).  The district court's speculation about the jury's interpretation of the contract terms is, therefore, misplaced.

Fischer's email in Exhibit 13 does not promise to pay Weiss Capital interest on its capital at the rate of 25%, as the district court found; it promises "a 25% return on that capital until it is repaid."  The difference between "25% interest" and "a 25% return" is explained by the provisions of the operating agreement attached to the email, which states that "[n]o interest shall be allocated to any Member on the amount of its Capital Account."

The operating agreement defines several terms, as follows:

> "'**Capital Contribution**' shall mean any contribution to the capital of the Company in accordance with Section 6.1 hereof."

> "'**Unreturned Capital**' means, with respect to a Membership Interest, the Capital Contribution made in exchange for or on account of such Membership Interest, reduced by all distributions made by the Company that constitute a return of the Capital Contribution therefor."

> "'**Return**' means, with respect to a Membership Interest, an amount accruing each day, like interest, on the then-outstanding Unreturned Capital with respect to such Membership Interest, at the rate of 25% per annum, compounded annually."

> "'**Unpaid Return**' means as of any date, an amount equal to the excess, if any of (a) the aggregate Return accrued on all Membership Interests from the date of issuance through such date, over (b) the aggregate amount of prior distributions made by the Company in respect of accrued Return with respect to all such Membership Interests pursuant to Section 6.4.

11

Applying these definitions, Weiss Capital's "Capital Contribution" to Private Capital was $500,000. Until Weiss Capital receives a distribution from Private Capital that constitutes a return of its "Capital Contribution," its "Unreturned Capital" is $500,000. And until Weiss Capital's "Unreturned Capital" is reduced to zero, a "Return" amount will accrue each day on the outstanding balance of its "Unreturned Capital" at the rate of 25% per annum.

But this does not mean that Weiss Capital is entitled to receive interest of 25% per year on its $500,000 investment. Instead, the accrued "Return" becomes "Unpaid Return" until it is paid off by a distribution made pursuant to section 6.4 of the operating agreement.

Section 6.4(a) states:

> Distributions of Operating Proceeds, Capital Proceeds and any other assets (with the fair market value of any assets other than cash determined in good faith by the Manager) shall be made to the Members as follows, at such time or times as the Manager shall determine in its sole discretion:
>
> (i) First, one-hundred percent (100%) to the Members, pro rata in respect of their Membership Interests, until the aggregate Unreturned Capital in respect of the Membership Interests equals zero;
>
> (ii) Second, one-hundred percent (100%) to the Members, pro rata in respect of their Membership Interests, until the aggregate Unpaid Return in respect of the Membership Interests equals zero;
>
> (iii) Thereafter, to the Members pro rata.

Thus, whether to make a distribution is solely within the discretion of the manager, and, if the manager decides to make a distribution, the amount distributed is

used first to reduce each member's aggregate unreturned capital to zero and then to reduce each member's unpaid return to zero. Applying these principles to Weiss Capital's $500,000 means that, if Fischer decides to make a distribution, the amount distributed will be used first to return to Weiss Capital its $500,000 and then to pay Weiss Capital whatever return has accrued on its unreturned capital at the rate of 25% per annum.

The accruing amount is not a sum that the company is required to pay to a member as if it were interest. Instead, it is an amount to be paid under section 6.4 if the manager decides to make a distribution. This means that Private Capital did not have a contractual obligation to pay Weiss Capital interest on its $500,000. Weiss Capital may become entitled to receive a 25% return on its investment if Private Capital is successful and the manager decides to make a large enough distribution, but the evidence does not demonstrate that it is entitled to receive 25% interest on its $500,000. We, therefore, reverse the denial of appellants' motion for JMOL on respondent's breach-of-contract claim and remand for entry of judgment in Private Capital's favor on that claim.

## IV.

Attorney fees were awarded under the operating agreement, which states:

> Notwithstanding anything to the contrary in this Agreement, in the case of any dispute between the Company and any Member or Members, or between or among Members, regarding enforcement or interpretation of this Agreement, or any suit by the Company against any Member, or by any Member against the Company or any other Member, to enforce or interpret this Agreement, the substantially prevailing party in such dispute or suit shall be reimbursed by the other party or parties for the substantially

13

> prevailing party's reasonable costs and expenses incurred in such dispute or action (including, without limitation, court costs and reasonable attorney's, expert witness', accountant, and other professional fees and expenses).

Because we have reversed the denial of appellants' motion for JMOL on respondent's claims for conversion, punitive damages, and breach of contract, we reverse the awards of costs and attorney fees and remand to permit the district court to award costs and attorney fees to the substantially prevailing party.

**Reversed and remanded**.