*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1262**

Patrick Exner,
Appellant,

vs.

Minneapolis Public Schools, Special School District No. 1,
Respondent.

**Filed May 9, 2016
Affirmed in part, reversed in part, and remanded
Connolly, Judge**

Hennepin County District Court
File No. 27-CV-14-6149

Andrew P. Muller, Muller & Muller, PLLC, Minneapolis, Minnesota; and

Thomas J. Conley, Law Office of Thomas J. Conley, LLC, Minneapolis, Minnesota (for appellant)

Clifford M. Greene, Janine W. Kimble, Greene Espel PLLP, Minneapolis, Minnesota (for respondent)

        Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**CONNOLLY**, Judge

Appellant challenges the Minn. R. Civ. P. 50.01 dismissal of his Minnesota Government Data Practices Act and defamation claims against his former employer, respondent school district. Appellant argues that he presented sufficient evidence of (1) disclosure of private personnel data and (2) actual malice, to survive respondent's motion for judgment as a matter of law. We affirm in part, reverse in part, and remand.

**FACTS**

Appellant Patrick Exner was employed at Ubah Medical Academy (Ubah) as an assistant director from July 2011 to July 2013. Appellant resigned his position at Ubah on July 31, 2013 upon being hired by respondent, Minneapolis Public Schools, Special School District No. 1 (MPS), to be the principal of Washburn High School (Washburn). On August 5, 2013, school district officials, along with several other education officials around Minnesota, received an anonymous e-mail accusing appellant of student-testing improprieties while working for Ubah. As a result, on August 6, 2013, appellant was placed on involuntary, paid, administrative leave. Following a meeting with the parents of Washburn students, the MPS superintendent issued a letter on August 8, 2013 stating that appellant would no longer be Washburn's principal. The relevant parts of the letter are as follows:

> I believe that [Washburn] needs a leader who will accelerate the positive momentum that has been building over the past few years. Due to the recent issues regarding [appellant], I have decided that he will no longer serve as Washburn's Principal.

. . . .

> The issues surrounding [appellant's] hiring have created an additional distraction that we cannot allow to continue. We are glad that the issue was brought to our attention, although we would have preferred to learn of any possible issues of concern during the hiring process and before the job offer was made. [MPS] conducted a thorough hiring process for the Washburn principal position, including references calls, and nothing surfaced as a potential problem.

Although appellant could have been reassigned to another principal position in the district he was not and appellant was finally terminated on September 10, 2013.

The hiring, subsequent placement on leave, and eventual termination was thoroughly documented in the newspapers, particularly by Star Tribune reporter, S.B. In an article published on August 9, 2013, forming the basis for appellant's defamation claim, S.B. wrote: "[MPS] also wants to terminate [appellant] from the district payroll, [S.A., spokesman for MPS] said, adding that [MPS] was negotiating with the union representing officials." At trial, S.B. claimed he accurately paraphrased S.A., while S.A. denied ever making the statement. On May 4-7, 2015, a jury trial was held in which appellant alleged violations of the Minnesota Government Data Practices Act (MGDPA) and defamation. After hearing motions for a judgment as a matter of law (JMOL) from both parties, the district court judge granted respondent's motion for JMOL on both the MGDPA and defamation claims and issued its opinion on June 4, 2015.

In that thoughtful opinion, the district court concluded that there was no MGDPA violation because the letter from the superintendent to the parents "does not divulge information about the nature of the complaint made against [appellant]" and that a statement that appellant would no longer serve as Washburn's principal does not constitute

3

a violation of the MGDPA because the public has a right to know the principal's name at a major metropolitan high school. Regarding the defamation claim, the district court held that, because appellant was a public official, S.A.'s statement regarding MPS' desire to terminate appellant needed to be made with actual malice. The district court found that the statement was not made with actual malice because there was no evidence that S.A. had feelings of ill will toward appellant.

## DECISION

"Under Minn. R. Civ. P. 50.01, the court may grant judgment as a matter of law if a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009) (quotation omitted). A de novo standard of review applies to a Rule 50.01 motion for JMOL made during trial. *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quoting *J.N. Sullivan & Assocs. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)). We review grants of JMOL motions under the standard that evidence must be viewed "in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993); *see Bahr*, 766 N.W.2d at 919 n.11.

## I.     The district court did not err in granting JMOL on the MGDPA claim.

Appellant first challenges the district court's grant of JMOL on appellant's MGDPA claims. "Whether [a school district] disseminated personnel data in violation of the MGDPA involves our construction of the MGDPA, which is a question of law subject to de novo review." *Navarre v. South Washington Cnty. Schools*, 652 N.W.2d 9, 22 (Minn.

2002).  The purpose of the MGDPA is to reconcile the right to protect personal information from disclosure with the public's right to know what the government is doing.  *KSTP-TV v. Ramsey County*, 806 N.W.2d 785, 788 (Minn. 2011).  The MGDPA "regulates the collection, creation, storage . . . dissemination, and access to government data in government entities."  Minn. Stat. § 13.01 (2014).  With respect to complaints or charges against a government employee:

> A government entity's public comments before final disposition of any disciplinary action are limited to the possible existence of a complaint or complaints or charges against a government employee.  Any disclosure by the government entity during the investigation that describes any quality or characteristic of the complaint, whether general or specific, goes beyond the mere existence of the complaint, and therefore violates [Minn. Stat. § 13.43, subd. 2(a)(4)].

*Navarre*, 652 N.W.2d at 22-23.  In *Navarre*, a school district commenced an investigation against a teacher after receiving a series of complaints from teachers, students, and parents about her performance.  *Id.* at 16.  The court found that: (1) the use of "medical" in conjunction with the word "leave" in a letter to parents did not violate the MGDPA; (2) disclosing that there were "numerous" complaints against Navarre did not violate the MGDPA; (3) the characterization of the complaints as "sometimes alarming" violated the MGDPA because Navarre was "readily identifiable" when the statement was read in context and went to the nature of the complaint; (4) disclosing that the school district had received "multiple calls" about Navarre did not violate the MGDPA because the number of complaints is public data; (5) the disclosure that Navarre had other problems, that children were not having the same problems in other classrooms, and that the district had

5

been working with the teacher to help her learn better classroom management were violations of the MGDPA because they describe the nature and character of the complaints or charges during the investigation; (6) informing the public in a press release that Navarre was being suspended, that the children were having difficulty learning the curriculum and that concerns shifted from concern about student performance to concern about the teacher's teaching methods violated the MGDPA because they described the nature, character, and status of the complaints; (7) a statement that children were not learning violated the MGDPA because it disclosed more than the existence and status of any complaints by commenting on the specific facts; and (8) a letter by the human resources manager that said that she had received complaints from parents and students did not violate the MGDPA but the part of the letter saying the complaints involved "Ms. Navarre's classroom management and instructional methods" violated the MGDPA." *Id.* at 23-29.

In this case, appellant alleges that when the superintendent sent a letter to the parents that stated that MPS was investigating charges against appellant, and revealed that because of his "recent issues" she had decided that he would no longer be principal of Washburn, she violated the MGDPA by revealing more than the existence of a complaint. We disagree. The superintendent's letter referencing appellant's "recent issues" is more akin to the school district in *Navarre* disclosing that there were "numerous" complaints. *Id.* at 24. The letter in no way references the nature, character, or status of the complaint, not even hinting at the fact that he was under investigation for tampering with test results. The mere presence of complaints generated additional distractions and therefore all respondent

did was disclose the existence of complaints and inform the parents that MPS had decided to hire a different principal.

We conclude that the district court did not err as a matter of law in finding that appellant failed to state a claim under the MGDPA.[1]

## II.    The district court erred in granting JMOL on the defamation claim.

> To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is "communicated to someone other than the plaintiff," (2) the statement is false, and (3) the statement "tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community." If the defamation "affect[s] the plaintiff in his business, trade, profession, office or calling," it is defamation per se and "thus actionable without any proof of actual damages."

*Bahr*, 766 N.W.2d at 919-20 (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).

The statement at issue appears in an article published by the Star Tribune reporter S.B. which states: "[MPS] also wants to terminate [appellant] from the district payroll, [S.A.] said, adding that [MPS] was negotiating with the union representing officials." S.B. stated that he accurately paraphrased S.A.'s statement when directly questioned about the article, but refused to comment further citing the newsperson's privilege. *See* Minn. Stat. § 595.022 (2014) ("In order to protect the public interest and the free flow of information, the news media should have the benefit of a substantial privilege not to reveal sources of

---

[1] Because we conclude that the district court did not err in dismissing the MGDPA claim, we do not reach appellant's argument regarding whether respondent is entitled to JMOL because the claim was added on the eve of trial.

7

information or to disclose unpublished information. To this end, the freedom of press requires protection of the confidential relationship between the news gatherer and the source of information."). S.A. denies making the statement. At trial, S.A. conceded that the district was not seeking appellant's termination as of the date the statement was published and that he knew that the statement in the article was false at the time it was published. The district court assumed, for JMOL purposes, that the information came from S.A. But the court still found that there was no evidence or allegation that S.A. had feelings of ill-will toward appellant and therefore did not meet the actual malice required. In so finding the court stated:

> Under the higher constitutional standard, there is no evidence regarding the context by which [S.A.] made the allegedly defamatory statement. Aside from the [S.B.] article, no other media report indicated that the District wanted to terminate [appellant] from its payroll. With respect to the emails exchanged prior to the [S.B.] article, [S.B.] sought confirmation that the District wanted to terminate [appellant] and was working through the principal forum. Although indicating that [S.B.] could mention the principal's forum, neither [S.A.] nor [H.] would provide confirmation for the allegedly defamatory statement. Instead, [H.], citing [S.A.], specifically indicated that this information was not official; while [S.A.] responded that [appellant] was on administrative leave but would not return to Washburn. These facts do not indicate, with convincing clarity, that [S.A.] acted with a "reckless disregard" for the truth. For these reasons, [appellant] has not sustained his burden of establishing malice. Without evidence of malice, [S.A.] is protected by a qualified privilege; while [appellant], as a public official, cannot sustain a claim for defamation. Therefore, [appellant's] claim for defamation fails.

"The law recognizes essentially two definitions of malice in defamation cases: The 'actual malice' definition as set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254,

279-80, 84 S. Ct. 710, 726 (1964), and the common-law definition." *Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876, 890-91 (Minn. 1986). "When the plaintiff is a public official and the statement relates to the individual's official conduct, the plaintiff must prove not only that the statement was false, but also that the statement was made with actual malice." *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003) (citing *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991)). In Minnesota, teachers asserting a claim of defamation are deemed to be public officials. *Elstrom v. ISD No. 270*, 533 N.W.2d 51, 56 (Minn. App. 1995). It follows that principals are also considered public officials.

In common law defamation, even though an untrue defamatory statement has been published, the originator of the statement will not be held liable if the statement is published under circumstances that make it conditionally privileged and if the privilege is not abused. *Lewis*, 389 N.W.2d at 890.

> [A] communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Stuempges*, 297 N.W.2d at 256-57. If a party is entitled to a qualified privilege for its statements, that qualified privilege is lost if the plaintiff demonstrates that the defendant acted with actual malice. *Id.* It is undisputed that respondent is entitled to a qualified privilege in this case. Therefore, regardless of whether we are applying the *New York Times v. Sullivan* standard or the Minnesota common law with a qualified privilege

9

standard, if respondent made the statement with actual malice, the district court erred in granting JMOL.

Under the common law definition, used by the district court, actual malice requires a showing that the defamatory statements are "made from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Bahr*, 766 N.W.2d at 920 (quotation omitted). Malice is not proved merely by the fact that the statement has been made or by the fact that the statement is later proven to be false. *Id*. But the Minnesota Supreme Court has distinguished between good and bad faith in making false statements. *Id.* at 922. "Making a false statement knowing that it is false constitutes bad faith, and if it appears that the publisher knows the statement he makes is false, we need go no further in examining the question of actual malice." *Id.* (quotation omitted). *New York Times v. Sullivan* defines actual malice as making a statement with "knowledge that [the statement] was false or [was made] with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. at 726. Therefore, if the statement was made with knowledge of its falsity, the statement was made with actual malice.

In this case if we assume that S.A. made the statement, as we must looking at the evidence in the light most favorable to the party against whom JMOL was granted,[2] then if S.A. knew the information was false at the time the statement was allegedly made, it was made with actual malice. When S.A. was asked "You knew that in fact on August 9th the

---

[2] The district court also assumed that S.A. made the statement in its grant of JMOL, stating: "Given the email communications between the parties, however, together with [S.B.'s] testimony that the paraphrased information came from [S.A], the [c]ourt will assume, for the purposes of this motion, that [S.A] made the statement in question."

District was not working to terminate [appellant's] employment?" he responded "Yes, I did." S.A. knew that the statement was not true as of the date the statement was released. Therefore, for purposes of a JMOL motion, appellant met his burden of showing actual malice. The district court erred in finding that, as a matter of law, there was no actual malice and the case must be remanded for a new trial in order to determine if S.A. made the statement in question, a clear question of fact for the jury.

Respondent's argument that S.B. only testified by reading words reflected in the article is inaccurate. S.B. clearly testified that S.A. "was the source of the information in the article about the [MPS] working to terminate [appellant's] employment." This testimony from cross-examination at trial shows that S.B. testified to more than just reading what was written in the newspaper article.

We now address respondent's additional claim that S.B.'s testimony should be stricken from the record because respondent was not able to conduct meaningful cross-examination of S.B. thus leaving no competent evidence that S.A. made the allegedly defamatory statement. The district court ruled against respondent's motion in limine to exclude S.B.'s testimony on that basis. Because respondent did not file a related appeal of that decision, the issue of whether or not the district court properly admitted S.B.'s testimony is not properly before this court. At oral argument, respondent contended the issue was preserved for appeal because it listed it in respondent's statement of the case and as one of the issues in respondent's brief. We disagree. An issue decided adversely to respondent is not properly before an appellate court if notice of review is not filed. *City of Ramsey v. Holmberg*, 548 N.W.2d 302, 305 (Minn. App. 1996), *review denied* (Minn.

11

Aug. 6, 1996). Failure to file a notice of review limits issues on appeal to those properly raised by appellant. *Nordling v. Northern States Power Co.*, 465 N.W.2d 81, 87 (Minn. App. 1991).[3]

As a result, in order to find for respondent that there is no competent evidence that S.A. made the allegedly defamatory statement, we must find that S.B. provided no competent evidence in his testimony that S.A. actually made the statement. At trial, S.B. was asked "Did you base your story or your article [containing the allegedly defamatory statement] on what [S.A.] told you?" and he responded "Part of the article is based on what [S.A.] told me. Part of it is based on a statement issued by [the superintendent]. Part of it is based on previous reporting involving District principal searches." S.B. was then asked "was [S.A.] . . . the source of the information in the article about the Minneapolis Public Schools working to terminate [appellant's] employment[?]" to which [S.B.] responded "Absolutely." We conclude that this is sufficient, competent evidence that S.A. made a defamatory statement, and we conclude that the defamation claim should have gone to the

---

[3] It is true that in its statement of the case, respondent listed "[w]hether [appellant] presented sufficient evidence that [S.A.] made certain statements to a reporter, when [S.A.] denied making the statements, the reporter presented only hearsay testimony about what [S.A.] may have said, and the reporter invoked the reporter's privilege, insulating himself from cross-examination" as an issue raised but not ruled on. However, as previously discussed, the district court did specifically rule on this issue when it denied respondent's motion in limine. In its ruling, the district court denied the motion to exclude the testimony of S.B. and dismiss all claims based on the statement S.A. allegedly made to S.B. The district court stated that respondent's argument was based on S.B.'s testimony constituting hearsay, paraphrasing S.A., and that S.B's refusal to answer certain cross-examination questions deprived it of its due-process rights. If respondent wanted to raise these arguments again then it needed to appeal the district court's decision. In reaching this conclusion, we find no fault with respondent's counsel. Deciding what rulings to appeal and how to frame issues is more of an art than a science.

12

jury to determine if a defamatory statement was actually made.  Consequently, we remand the case to the district court for a jury trial on appellant's defamation claim.

**Affirmed in part, reversed in part, and remanded.**